76 419
88 680
76 419
92 459

# Richmond.

## MOSELEY, TRUSTEE V. BROWN AND ALS.

### April 20, 1882.

1. USURY.—Sale at discount greater than legal interest, of negotiable notes made and endorsed in blank for purpose of raising money, by broker for maker to purchaser ignorant of that purpose, is not usury.
2. IDEM.—But payment of illegal interest, after maturity of notes for forbearance, is usury, and the usurious premium may be recovered back.
3. IDEM—Borrower and lender at usurious rates, not *in pari delicto;* the former acts under a *quasi* duress; and the maxim, "*In pari delicto, potior est conditio defendentis,*" does not apply.
4. IDEM—*Statute Construed.*—Common law remedy of borrower to recover back illegal interest, is restored by the repeal of Code 1873, ch. 137, § 10, and the amendment of § 5, by ch. 122 of Acts 1874, in case of usury for *forbearance.*

    *Quære:* As to case of negotiable note usurious *in its inception.*
5. PRACTICE—*Issue out of chancery—Instructions.*—Bill to recover back alleged usurious interest paid both in the inception and for forbearance ; issue directed to try, "Whether the transactions in the bill alleged to be usurious, be usurious or not." Proved, *first,* that the negotiable notes had been made and endorsed in blank for the purpose of raising money, and sold (at discount greater than legal interest) by broker for maker to purchaser ignorant of that purpose ; and, *second,* that after maturity of notes, maker had paid holder illegal interest for forbearance. Court below, in substance, instructed the jury, that if they believed the facts stated in *first* proposition to be proved by the evidence, they must find for the defendants ; and also that, in ascertaining whether or not the transactions in issue were usurious or not, they should exclude from consideration the payments of interest made by the maker.

HELD :

   These instructions were erroneous. The issue was broad enough to cover all the transactions, as well the payments for forbearance as the rest. In this case, the usury being, not in the inception, but in the payment of the forbearance money, lender is entitled to his principal and legal interest, less the sum paid him at the dates of payment.

Appeal from the decree of chancery court of Richmond city in suit of William P. Moseley, trustee, &c., against William E. Sparrow and others.

In February, 1875, Moseley made his note for $1,200, payable at one year, and placed it in the hands of Brown, a broker, to raise money on it. Brown sold the note to Sparrow for $1,056, who knew nothing of the purposes for which it was made. When the note fell due, Moseley paid Sparrow, through Brown, the interest at 12 per cent. ($144), to prevent collection. A year later he paid a like sum for the like purpose. In February, 1878, he made a new note for $250, payable at one year, and, through Brown, sold it to Sparrow for $225, and with $120 thereof he paid the interest on the $1,200 note for a year longer for same purpose. In 1879 the property—whereon a deed of trust had been executed by Moseley to secure these notes—was advertised by the trustee for sale. Moseley, as trustee, &c., then filed his bill alleging usury in the inception of both notes and in the payments of 12 and 10 per cent. for three years for forbearance. An issue was directed to try whether or not there was usury in the transactions. The court instructed the jury to "exclude from their consideration the sums of money actually paid by Moseley as interest, as those sums could not be recovered in this proceeding; and that, unless from the evidence they believe that the notes were usurious in their inception, or that there had been an agreement for the payment of usurious interest upon those notes, which yet remains unpaid, they must find for the defendants." Under this instruction the jury found the transactions not usurious, and the court decreed accordingly; and from this decree Moseley, trustee, &c., appealed.

*B. H. Nash*, for appellant.

1. Decree complained of is erroneous, because, *independent*

*of any statute,* a bill lies for borrower to recover back money already paid on a usurious contract. *Demming* v. *Davis, &c.,* 12 West Va. 247.

2. Because the chancellor did not follow in his decree of sale the terms and conditions prescribed in the deed of trust. *Fultz* v. *Davis,* 26 Gratt. 903.

3. And because the instructions given the jury were erroneous.

*John S. Wise,* for appellees.

BURKS, J., delivered the opinion of the court.

Two propositions are clearly established by the facts certified as proved on the trial of the issue in this case.

1. Upon these facts, there was no usury in the notes held by the Sparrows or in the deeds of trust given to secure them. The proof is, that the notes were made by Moseley, trustee, for the purpose of raising money. They were endorsed by him in blank, and put into the hands of a broker for sale on the maker's account, and were purchased from the broker by the Sparrows without any knowledge on their part of the purpose for which they were made. According to the repeated decisions of this court, this transaction was a valid sale, not a usurious loan. *Taylor* v. *Bruce,* Gil. 42; *Whitworth* v. *Yancey & Adams,* 5 Rand. 333; *Bummell* v. *Enders,* 18 Gratt. 873; *Gimmi* v. *Cullen,* 20 Gratt. 439; 2 Minor's Inst. 291, and cases there cited.

2. When the note for $1,200 matured, the Sparrows, in consideration of $144 paid them by Moseley through his agent, extended the time of payment for twelve months. At the expiration of that time, and for a like consideration paid them, they forbore collection for another twelve months, and after that for still another year—the amount paid for the last extention being $120. The consideration

for the forbearance, each period being at a rate of interest greater than six *per centum per annum*—the rate being twelve per cent. per year for the first two years, and ten per cent. per year for the last year—each transaction was clearly usurious within the meaning of the statute (Acts of 1874, ch. 122, § 4); *Græme* v. *Adams*, 23 Gratt. 225.

Notwithstanding the last proposition, according to the facts certified, was as clearly established as the first, the finding of the jury that the transactions alleged in the bill to be usurious were not usurious, was the necessary result of the instructions given to them by the court. They were directed, in substance, that if they believed the facts stated in the first proposition to be proved by the evidence, they must find for the defendants in the issue (the holders of the notes), and, that in ascertaining whether the transactions in issue were usurious or not, they should exclude from their consideration the payments of interest made by Moseley.

We are of opinion that these instructions were erroneous.

The bill charges that not only the notes and deeds of trust, but also the subsequent acts of forbearance were usurious, and the issue was whether these transactions were usurious or no. It was broad enough to cover all the transactions, and the certificate of facts shows that evidence touching all was admitted. Such being the issue, the error consists in directing the jury to disregard the evidence relating to a part of the transactions—namely, the payment of interest for the forbearance given.

It would seem, from the opinion of the chancellor copied into the record, that he considered that although it may have been illegal to bargain for interest at a higher rate than six *per cent. per annum* for forbearance, yet, if the interest was paid, it could not be recovered back, or, which

amounts to the same thing, be set off against the debt forborne.

Though once doubted, it has long been regarded in England and in this country as the settled rule, both at the common law and in equity, that the borrower who has paid usurious interest may recover it back. He is put upon terms however. He shall not get back the principal or the legal interest. He must account for these. His remedy is limited to the excess, the usurious premium. This doctrine was recognized by this court in *Clarkson's Adm'r* v. *Garland*, 1 Leigh, 162, and in *Spengler* v. *Snapp*, 5 Leigh, 478, 505.

In a few of the states a different rule prevails, but this is owing to statutory regulations, as an examination of the decisions we think will show. The adjudged cases on the subject are far too numerous for citation in an opinion. Many are referred to in Tyler on Usury, ch. 32. We cite a few only. *Brown* v. *McIntosh* (decided in 1876), 10 Vroom (N. J. Law), 22; *Wheaton* v. *Hibbard*, 20 Johns. 290; *Phil. Building Association* v. *McNight*, 35 Penn. St. 470; *Scott* v. *Leary* (decided in 1871), 34 Maryland R. 389; *Willie* v. *Green*, 2 N. Hamp. 333; *Smith* v. *Bromley*, 2 Douglass, 695.

The legislation in this State on the subject of interest since the late war, commencing with the provision incorporated in the present constitution and afterwards stricken out, has fluctuated greatly. We do not propose to notice all the changes made from time to time. From an early period, the provision substantially as found in § 5, ch. 141 of the Code of 1849, declaring all contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing to be *void*, has been the law. It so continued till April 1, 1873 (Acts of 1872–3, ch. 336; § 5, ch. 137, Code of 1873), when it was amended so as to render such contracts and assurances *void* only as to *the interest in excess of the legal rate*. It was again amended in 1874, and now reads thus:

" § 5. All contracts and assurances made directly or indirectly, for the loan or forbearance of money or other thing, at a greater rate of interest than is allowed by the preceding section [it allows six *per centum per annum*], *shall be deemed to be for an illegal consideration as to the excess beyond the principal amount so loaned or forborne.*"    Acts of 1874, ch. 122.

The same act (1874) repeals § 10, ch. 137, Code of 1873. That section (10) gave to the person paying, the right to recover the excess beyond lawful interest paid in any case. It is argued from the repeal of this section and the altered phraseology of § 5, that the intention of the legislature was to take away all remedy for the restitution of usurious interest after payment.   We do not think this is a just inference.   In 1849, when the section had its origin, the borrower, as before stated, had his remedy at common law, and the object of the statute, as it seems to us, was to limit the enforcement of the remedy to one year, and also allow a recovery against the party with whom the contract was made, or to whom the assurance was given, although the payment of the usurious excess had been made to his endorsee or assignee.   See note—Report of Revisors, 714.

The effect, therefore, of the repeal of the section was to completely restore the common law remedy, as between the borrower and lender, unless the inference of the intent thus to restore is repelled by the change in the language in section 5; and we do not think that is the case.   What effect this change has on the rights of the borrower as against the *bona fide* holder for value of a negotiable instrument, usurious in its inception, we do not decide.   Our opinion is confined to the case we have to deal with.   It is true, as a general rule, that where an illegal contract, or one for an illegal consideration, has been voluntarily performed, a party who has paid money under it cannot recover it back.   The reason is, that where plaintiff and defendant are *in pari delicto*, there *potior est conditio defendentis*

There must be *par delictum*—the parties participating in the violation of the law must be equally guilty. This is not the case, at least in legal contemplation, as between the lender and borrower of money at usurious rates. It has long been considered in law, that in usurious transactions the borrower acts somewhat under duress; that he is not altogether a free agent in the business; in the language of some of the books, that he is the slave of the lender. We quote from the opinion of Judge Strong, in *Philanthropic Building Association* v. *McKnight,* 35 Penn. St. 472: "That the payment of usurious interest is not a voluntary payment in any such sense as to entitle the receiver to retain the sum paid above legal interest, is too well settled to admit of doubt. The money is paid under the constraint of a formal though illegal contract. That contract itself was obtained by oppression, by taking advantage of the necessities of the borrower, and, of consequence, so was the usurious interest paid under it. The early disposition of the English courts was to deny the right of a party paying such interest to recover back any portion of the money paid, for the reason that both parties were deemed to be " *in pari delicto,*" so that the maxim, " *volenti non fit injuria,*" would apply. 1 Salk. 22. The authority of this decision, however, was soon questioned. Lord Mansfield declared that the case had been denied a thousand times. Cowper, 199. At a late date distinction was taken between transactions under statutes enacted on grounds of general policy, where each party violating the law is held to be in equal fault, and transactions under the usury laws, enacted to protect weak and needy men from being defrauded and oppressed. To the latter the law does afford relief. It regards the lender on usury as an oppressor, and the borrower as the injured and oppressed. *Browning* v. *Morris,* Cowp. 790; *Briggs* v. *Thompson,* 20 Johns. 294; *Thomas* v. *Shoemaker,* 6 Watts & Serg. 183. And in none of the cases

do we discover that any other evidence of duress or oppression has been held to be necessary than such as is involved in the act itself of taking the money under the usurious contract. The principle of the statutes of usury seems to be that the lender is the wrongdoer, and that the borrower is his victim.

In the note to *Smith* v. *Bromley,* 2 Douglass, 696, it is given as one of the deductions from the cases, that where the law that creates the illegality in the transaction was designed for the coercion of one party and the protection of the other, or where the one party is the principal offender, and the other criminal from a constrained acquiescence in such illegal conduct, in these cases there is no parity of *delictum* at all between the parties, and the party so protected by the law, or so acting under compulsion, may at any time resort to the law for his remedy, though the illegal transaction be completed.

According to the facts as certified in the case before us, there was no usury in the notes and the deed of trust given to secure them. They are valid securities in the hands of the purchaser. But it is just as clear upon those facts, that the transactions for forbearance are usurious. These transactions were subsequent to and distinct from the original creation and securing of the debts, and therefore the debts are not tainted with the usury in the subsequent forbearance, and the purchasers are entitled to the principal money with legal interest and to the benefit of the securities, but they should be required to allow for what was paid for the forbearance, to be applied first to the extinguishment of the legal interest and the excess to the principal of the debt. *Brown* v. *Toell's Adm'r,* 5 Rand. 543; *Rankin's Ex'or* v. *Rankin's Adm'r,* 1 Gratt. 157; *Parker* v. *Cousins,* 2 Gratt. 373; *Clarkson's Adm'r* v. *Garland,* 1 Leigh, 147; *Spengler* v. *Snapp,* 5 Leigh, 478; Comyn on Usury, 183–195.

The bill, so far as it charges usury in the notes and the

deeds of trust to secure them, seems to have been framed with reference to § 12, ch. 137, Code of 1873. But it also charges usury in the subsequent forbearance of the secured debts and payment of usurious interest, and although the debts and securities may be ascertained not to be usurious, yet if the usurious forbearance and payment be established, we perceive no good reason why as to the last-named matters the same relief should not be granted as if the bill had been confined to these matters. The nature and extent of that relief, upon general principles and independently of any statute, has already been indicated.

The bill makes no case against the defendant, J. Thompson Brown (the broker), and was therefore properly dismissed as to him on the demurrer.

The result is, that the decree of the chancery court must be reversed. But we do not deem it necessary, under the circumstances, to set aside the verdict of the jury. The issue, at the trial, was narrowed by the instructions of the court, and the inquiry of the jury limited to the alleged usury in the notes and deeds of trust. Thus limited, upon the facts certified, the finding may stand; and we think there is enough in the record to show the usury in the forbearance and the amount paid, without directing further inquiry into those matters.

The cause will be remanded to the chancery court with directions to charge Moseley with the two debts secured by the deeds of trust and legal interest thereon respectively from the maturity of each note, deduct the sums paid by him at dates of payment, applying the payments first to the extingushment of legal interest and then to the principal amounts, and direct the land to be sold to discharge the residue, unless payment thereof be made within such reasonable time as the court shall prescribe.

DECREE REVERSED.