92  446
95  534
a95  678

92  446
98  167

92  446
f100 503
f100 505

92  446
f102 282

# Richmond.

MUNFORD, TRUSTEE, v. McVEIGH'S ADMINISTRATOR.

JANUARY 9, 1896.

1. USURY—*Limit of Lender's Recovery.*—If, in an action at law or suit in equity, the defence of usury be established, the lender can only recover the principal sum loaned or forborne.

2. USURY—*General Payments by Debtor—Application of Payments by Court.*—Where payments have been made on an usurious debt, and the debtor has failed to apply the payments specifically, the court should first eliminate the usury, if any, from the principal of the debt, and apply the payment to the sum actually loaned or forborne.

3. USURY—*Payment by Debtor Specifically on Account of Interest—Suit to Recover Back—Set-Off.*—Where payments have been made upon a debt upon which a greater rate of interest than that allowed by law is reserved in the contract, or received in order to secure the forbearance of the lender, and the borrower himself applies the payment to the interest, or the lender so applies it with the assent of the borrower, the appropriation so made will not be disturbed, unless within one year thereafter a suit be instituted by the borrower for its recovery, or a suit be brought by the lender within that period, in which case the borrower may set it off against the demand for which he is sued.

4. USURY IN THE CONTRACT—*Application by the Court of General Payments—Specific Application by Debtor.*—Where there is usury *in the contract* as distinguished from the reservation of a greater rate of interest than is allowed by law, as where the contract is expressed to be for a greater sum than that actually loaned or forborne, in a suit either by the lender or borrower, at law or in equity, it is the duty of the court, usury being established, to eliminate the usurious principal, and then apply the rule as to payments as hereinbefore declared—applying all unappropriated payments in satisfaction of the principal sum justly due, and leaving undisturbed such payments as the parties have themselves applied—and upon the principal so ascertained interest should be allowed at the legal rate from the date of the judgment or decree.

Appeal from a decree of the Circuit Court of Alexandria, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*Staples & Munford*, for the appellant.

*John M. Johnson*, for the appellee.

KEITH, P., delivered the opinion of the court.*

The facts in this case, so far as they are material to a proper understanding of the question to be discussed, are as follows :

On the 7th of February, 1881, William N. McVeigh, of Alexandria, Va., executed a bond, payable twelve months after date, to C. A. Baldwin, trustee for Mariah L. Baldwin, for the sum of $4,000, with interest at 7 *per cent.* To secure the payment of this bond, he conveyed certain real estate to Francis L. Smith, as trustee, and McVeigh having died, and Robert Munford having been substituted as trustee in the place of C. A. Baldwin, and default having been made in the payment, Francis L. Smith was required to execute the trust. He accordingly advertised the property for sale, and thereupon McVeigh's personal representative applied for and obtained an injunction, upon the ground, among others, that the debt secured was for a rate of interest forbidden by law. The answers admit that the bond bore a rate of interest exceeding *six per cent.*, and that the law required the personal representative of the obligor to interpose the plea of

---

* Judge Keith decided the case in the Circuit Court, but participated in the decision in the Court of Appeals at the request of the counsel on both sides.

usury; but the defendants deny that there was any necessity for the intervention of a court to ascertain the amount due upon the bond, because, as is averred in the answer of Mariah L. Baldwin, the obligor, William N. McVeigh, in order to prevent any doubt or contention as to the facts, a short time prior to his death, prepared a paper setting forth the several sums of money which had been paid upon the aforesaid bond on account of interest to the date of the statement, to-wit: the 10th day of April, 1889. In this statement it appears that nothing has ever been paid upon the principal of the bond, but that all the payments were, by express agreement between the creditor and the debtor, applied in discharge of the interest; and it further appears that the several sums so paid were not more than sufficient to pay the interest accruing upon the debt at the rate of 6 *per cent. per annum.* In the answers the defendants pleaded the statute of limitations found in section 2823 of the Code. The case was heard in the Circuit Court of the city of Alexandria, and that court entered a decree on the 31st day of March, 1891, directing the sum of $1,706.41, being the aggregate of all payments for or on account of interest on said bond, to be credited upon the principal, in accordance with the decisions of this court in *Meem* v. *Dulaney's Ex'ors*, 88 Va. 674, and *Edmunds's Ex'ors* v. *Bruce*, 88 Va. 1007, and decreed in favor of Mariah L. Baldwin for the sum of $2,293.59, the sum remaining due after applying the credit aforesaid, and from this decree an appeal was allowed by this court.

That an usurious rate of interest was received is conceded; the only question, therefore, to be considered is what is the measure of relief to which the borrower is entitled under the law.

Before coming to a discussion of the precise question involved, it may be instructive to review the statutes which have heretofore been passed and the decisions which have been rendered in this court upon the subject of usury.

Opinion.

In England up to a comparatively recent period the statutes against usury were very radical in their character, and were rigidly enforced. Under their operation the whole of the debt, principal and interest, was avoided at law, but where a borrower came into a court of equity, seeking relief from an usurious transaction, that court, proceeding upon the principle that he who asks equity must do equity, required him, as a condition to the enjoyment of the relief which he prayed, to pay his creditor principal and legal interest, and he was only permitted to recover back the usurious gain or excess. See *Browning* v. *Morris*, 2 Cowper 792; *Smith* v. *Bromley*, 2 Doug. 697; and note to *Jones* v. *Barkley* in same report.

This doctrine of the English chancery was adopted in this State, but at an early period it was so far modified that the borrower who appealed to a court of equity for relief from an outstanding usurious transaction was required only to pay the principal debt, without interest. This principle appears in the Code of 1819, p. 374, sec. 3, which declares that

" Any borrower of money, &c., may exhibit a bill in chancery against the lender, and compel him to discover, upon oath, the money or thing really lent, and all bargains, contracts or shifts, which shall have passed between them, relative to such loan, or to the re-payment thereof, and the interest or consideration for the same; and if, thereupon, it shall appear that more than the lawful interest was reserved, the lender shall be obliged to accept his principal money, without any interest or other consideration, and pay costs, but shall be discharged from all other penalties of this act."

It has constituted a part of our statute law, in substantially the same form, since 1786, and it may be from an earlier period, and is continued in our present Code, without material variation, as section 2822. This section, however, has been held not to apply where the usurious loan had been paid. Thus we find that, in the case of *Spengler* v. *Snapp*, 5 Leigh 478, it appearing that the

whole debt had been paid, the borrower who came into a court of equity for relief was held entitled to recover only the excess above the principal and legal interest, with interest on such excess. Indeed, if it be true that in a court of equity a borrower seeking relief was required to do equity by paying the principal debt with legal interest thereon, it would seem to follow as an inevitable consequence that, having discharged his obligation, he could, when coming into a court of equity for relief, recover back only the excess over and above the principal and legal interest. He could certainly not successfully invoke the aid of a court to recover more than the court would have permitted him to retain.

This principle seems to have applied as well at law as in equity, for Tucker, in his Commentaries, says (Book 2, p. 380) that if the borrower pays up the amount of his usurious bond to the usurer, and afterwards, on discovering the evidence of the usury, sues to recover it back in an action for money had and received, he can only recover the usurious gain, since *ex æquo et bono* he ought not to recover back the money really advanced and the legal interest thereon.

In *Norvell* v. *Hederick*, 21 W. Va. 523, it is said : " Where usurious interest has been paid and the transaction closed, the borrower may recover back from the lender the excess so paid beyond the legal rate in an action of *assumpsit* for money had and received, but if the debt, or any part of it, on which such usurious interest has been paid, remains unpaid, a court of equity, in stating the account between the parties, will credit upon the principal of such unpaid part whatever usurious interest has been paid, and give the lender a decree for his debt, with legal interest only."

And here it may be well to remark that when usurious interest is spoken of, we understand it to mean the excess of interest over and above the legal rate.

Not only does this appear from numerous decisions of this

Opinion.

and other courts, but it is expressly recognized by section 2823 of our Code, which limits the time within which a suit may be brought to recover back the excess over the legal interest, and prescribes that the action for the recovery for "excess beyond the lawful interest" must be brought within one year after it is paid. It seems, therefore, that where the debt is unpaid, and the borrower comes into a court of equity for relief, he comes under the terms of what is now section 2822 of the Code, and that he is entitled to relief upon the payment of the principal sum only, without interest, and the lender pays the costs of the suit. Where the usurious debt has been discharged, and, under the doctrine announced in the case of *Spengler* v. *Snapp, supra,* the borrower would have been entitled to recover back the excess above principal and legal interest, with interest on such excess, it is now provided by statute that the suit must be brought to recover back the excess of interest paid, over and above legal interest, within one year from the time of payment.

Where a suit in equity was brought to stay proceedings under a deed of trust given to secure an usurious transaction, on the ground that the plaintiff had no opportunity to plead usury, and where he prayed for no discovery, but, on the contrary, was ready to prove the fact, it was held, in the case of *Marks* v. *Morris,* 2 Mun. 407, that relief ought not to be granted to him upon the condition of his paying the principal sum of money, but the trustee should be altogether enjoined from selling until some proper proceeding should be instituted by the beneficiary of the trust to establish the validity of his contract, and if, as a result of that proceeding, it appeared that the contract was not tainted with usury, that the injunction should be dissolved, but if it appeared that there was usury, that the injunction should be perpetuated. In other words, it was established that a borrower coming in and asking relief under the circumstances disclosed in

that case did not come under the provisions of section 3 of the Revised Code of 1819, but that a court of equity, in order to give the borrower the opportunity of making his defence at law, would require his creditor to institute an action against him, and, in the event that the usury was established, the same measure of relief was afforded the borrower as would have been given had the creditor sued at law in the first place. The reason assigned for it was, that otherwise, under the operation of the deed of trust, the borrower would be required to repay the loan with the usurious interest without ever having an opportunity to make defence in any tribunal. This decision gave rise to much controversy. It seems never to have met the cordial approval of the profession, or of the courts. It was doubted and questioned from time to time, and was finally disapproved and overruled in *Bell* v. *Calhoun*, 8 Gratt. 22, where it was held that the proper measure of relief is not to perpetuate the injunction for the whole amount of the bond and interest, but to credit "the amount of the usurious premium found by the verdict of the jury against the principal money and interest secured by the deed." This was a distinct recurrence to the doctrine of the English court of chancery, and the principle of the decision is that the party coming into equity for relief must submit himself in all cases to the law of that forum; that, asking equity, he must do equity; that this principle applied to usury as well as to all other grounds of relief; and that justice and good conscience required the borrower to pay principal and legal interest.

In 1849 the Legislature embodied the doctrine of *Marks* v. *Morris* in the statute on usury, which appears as section 10, chapter 141, of the Code of 1849, which provides that

"Upon a bill, requiring no discovery of the defendant, but praying an injunction to prevent the sale of property conveyed to secure the payment of a sum of money or other thing borrowed at usurious interest,

Opinion.

the court shall cause an issue to be made and tried at its bar by a jury, whether or no the transaction be usurious; on the trial of such issue, neither the bill nor the answer shall be given in evidence. If the jury find the transaction usurious, then the same relief shall be given as if the party claiming under the conveyance had resorted to the court to make his claim available. But the court may grant new trials as in other cases."

This section was continued as part of our statute law until the Code of 1887, from which, for satisfactory reasons, it was omitted. See opinion of Lacy, J., in *Edmunds's Ex'ors* v. *Bruce*, 88 Va. at p. 1007.

During all the period of which we have thus far been speaking the legal interest was six *per cent. per annum*, and until the act of 1874 all contracts and assurances made, directly or indirectly, for the loan or forbearance of money at a greater rate than six *per cent.* were declared void. If, therefore, the lender sued at law for a debt, however large, and it was shown that a greater rate of interest was reserved than that allowed by law, however small the excess may have been, the whole contract was void, and he recovered nothing. The same consequence followed even in equity, by virtue of section 10, where the borrower resorted to that forum to enjoin a sale under a deed of trust and asked no discovery of the defendant; while under section 3 of the Code of 1819, which was continued in the Code of 1849 as section 7, the borrower was authorized to compel the lender to discover everything relative to the contract, and, if it appeared that more than legal interest was reserved, the lender was permitted to recover only his principal sum without interest, and was required to pay the costs of the suit. If, however, the borrower, where the loan had been wholly repaid, came into a court of equity asking relief, he could only have relief upon the terms of that court—that is to say, the payment of the principal sum due, with lawful interest thereon.

By section 8 of the Code of 1849 it is provided: "If an

excess beyond the lawful interest be paid in any case, the person paying the same may, in a suit brought within one year thereafter, recover it from the person with whom the contract was made, or to whom the assurance was given " ; which is a limitation upon the right established in the case of *Spengler* v. *Snapp*, 5 Leigh 478.

Sec. 2817 of the Code provides that the legal rate of interest shall continue to be at the rate of six *per cent. per .annum ;* and sec. 2818, " that all contracts and assurances made, directly or indirectly, for the loan or forbearance of money, or other thing, at a greater rate of interest than is allowed by the preceding section, shall be deemed to be for an illegal consideration as to the excess beyond the principal amount so loaned or forborne." Prior to 1874, as we have seen, the whole contract is void. Under this section no part of the contract is void, but is deemed to be for an illegal consideration as to the excess beyond the principal amount loaned or forborne.

Sec. 2821 provides that where usury is established in an action brought by the lender on an usurious contract, the judgment shall be rendered for the principal sum only.

Sec. 2822 is sec. 7 of chap. 142 of the Code of 1849, and sec. 3 of chap. 102 of the Code of 1819.

Sec. 2823 is identical with sec. 8 of chap. 142 of the Code of 1849, and is a limitation upon the right to recover the excess over and above legal interest.

With the other sections in the chapter upon usury we have no concern.

It would seem, therefore, that where the lender sues at law he recovers his principal sum only, without interest; where the borrower sues in equity for discovery, he is relieved upon the payment of the principal without interest. The section which embodied the principle of *Marks* v. *Morris* was dropped from the Code, the reason for its omission being that, as the

same remedy could now be given under the statute both in law and in equity, there was no longer any occasion for its continuance. The controversy, therefore, which was waged over *Marks* v. *Morris* has ceased to be of any practical value, while, though the principle enunciated in *Spengler* v. *Snapp* is recognized in sec. 2823, the relief afforded is by that section limited to the period of one year. Hereafter it would seem that in cases involving the charge of usury, the only questions to be considered are, first, was there usury in the transaction; and, second, where payments have been made upon an usurious transaction, how should those payments be applied?

In the case before us it is conceded that the contract was for a rate of interest greater than is allowed by law. It appears, indeed, upon the face of the bond.

The only question, therefore, to be considered is as to the application of the payments. The amounts and dates of payments are uncontroverted, and it is admitted that the creditor and the debtor mutually agreed that they were to be applied to the interest accruing, and that the sums are not more than sufficient to satisfy the interest which had accrued upon the principal loan at the rate of *six per cent. per annum.* As we have seen, at a time when the statute law denounced usurious transactions as void, at a time when in a court of law a plaintiff against whom usury was established could recover nothing, a court of equity imposed upon the borrower seeking relief in that forum the duty of paying his debt, principal and interest, and relieved him only against the excess of interest over and above the rate established by law. We have seen that this principle, as modified by a very early statute in this Commonwealth, still required the payment of the principal sum due, without interest, where relief was sought in a court of equity against an usurious transaction which had not been fully discharged; and that where the

whole debt and interest had been paid, and the borrower sought relief in a court of equity, our court, in *Spengler* v. *Snapp, supra*, held him entitled to recover only the excess above principal and legal interest, with interest on such excess; and that even this measure of relief has been limited by sec. 2823 of the Code to a recovery of the excess over legal interest in a suit brought within one year.

In every instance, then, with the single exception of *Marks* v. *Morris* (and the cases which followed it), which was subsequently overruled in *Bell* v. *Calhoun*, a court of equity has always required, as a condition to granting relief in that forum, that the party seeking it should account for the principal sum loaned, with legal interest thereon, except in cases coming under the third section of the Revised Code of 1819, p. 374, so often referred to, and which now appears as sec. 2822 of the Code of 1887. As we have seen, the same principle obtains in courts of law. See cases upon this point heretofore cited.

Our statute now provides, not that the contract shall be void, but that it "shall be deemed to be for an illegal consideration" as to the excess beyond the principal. It is well settled that, where money is paid upon an illegal contract, neither party to it can recover it back, because they are equally in fault. To this rule an exception is made in cases of usury, because there the borrower is supposed to be acting under duress; but this is considered only to apply to the usurious excess, that is to say, to the excess of interest over and above the rate allowed by law. That this is the sense in which the term "usurious interest" is used in the books can be established by reference to many authorities, both adjudged cases and text-writers. Thus, Judge Tucker, in his Commentaries, already quoted, says that "the debtor can only recover back at law, as in equity, the usurious gain, since *ex æquo et bono* he ought not to recover back the money really

Opinion.

advanced, and the legal interest thereon." So, in Robinson's Practice (old ed.), at page 221, it is said that, "where the complainant seeks an account of and decree for money already paid on an usurious contract, he can recover back only the excess paid above principal and lawful interest, with interest on the amount of such excess." See *Campbell* v. *Patterson*, 11 Leigh 113 ; *Spengler* v. *Snapp*, 5 Leigh 478 ; *Clarkson* v. *Garland*, 1 Leigh 147 ; *Norvell* v. *Hederick*, 21 W. Va. 523 ; *Bell* v. *Calhoun*, 8 Gratt. 22 ; and Code of Virginia, section 2823.

In support of the rule that money paid upon an illegal contract cannot be recovered back, subject to the exception just stated, numerous authorities may be cited. See Benj. on Sales, page 962, where it is said : " A creditor may apply a payment to an illegal debt, but, if no application be made by either, where there are two debts, one legal and the other illegal, the law will apply the payment to the legal debt." The right of the creditor to make application of a payment to an illegal debt, though affirmed by such high authority, may well be doubted, and we incline to think that the correct rule is stated in the note to Benj. on Sales, p. 962, that while the creditor has no right to apply a payment to usurious interest, or an otherwise illegal demand, the debtor has the right to do so, and, if he makes the application or assents to it, he is bound by it. See *Emmons* v. *Haywood*, 11 Cush. 44 ; *Phillips* v. *Moses*, 65 Maine 70–73 ; *Pickett* v. *Merchants Bank*, 32 Ark. 346 ; *Cobb* v. *Morgan*, 83 N. C. 211 ; *Feldman v. Gamble*, 26 N. J. Eq. 494.

See also *Ewell* v. *Daggs*, 108 U. S. 143, where Mr. Justice Mathews states the distinction between acts *mala prohibita* and acts *mala in se*, and says that, while a contract for usury is illegal, the advance of money upon it constitutes a meritorious consideration which would support a subsequent liability or promise.

See also *Walsh* v. *Mayer*, 111 U. S. 36.   In that case the Circuit Court held that the whole of the interest paid being *void* by the Louisiana statute, a court of equity would impute its payment to the principal debt; but it was held on appeal to the Supreme Court, upon the authority of *Cooke* v. *Lillo*, 103 U. S. 792, that "the usurious interest could not thus be reclaimed nor imputed to the principal unless a suit to actually recover is begun"; and with us such a suit to recover would be limited to the period of one year after the payment is made.   See also *Carter* v. *Carusi*, 112 U. S. 482.

This brings us to the consideration of the case of *Meem* v. *Dulaney*, 88 Va. 674.   The facts of that case are very similar to those under consideration here.   That was an usurious contract, upon which there had been large payments of interest, and, default having been made, the trustee was directed to sell the property which had been conveyed to him as a security for the loan.   Thereupon a bill was filed praying an injunction against the trustee, which was awarded. The parties defendant answered.   An issue was made up and tried before a jury, which ascertained that the contract was usurious, and the Circuit Court rendered a decree upon the verdict, by which the excess paid over and above lawful interest was credited upon the principal of the debt.   From that decree an appeal was taken to this court, where the decree of the Circuit Court was reversed, and it was held that all the payments of interest that had been made should be applied to the principal of the debt.   The court in its opinion says:

"The *contract of loan* between Meem and Dulaney was for a greater rate of interest than six *per centum per annum* * * *; and was for an illegal consideration, and void as to everything beyond the principal sum loaned, * * * and the relief to which Meem is entitled under the law is to have all the payments made by him, for interest on the

transaction, credited on the principal sum borrowed by him
from Dulaney. The rule that, where a contract for an illegal
consideration has been voluntarily performed, a party who
has paid money under it cannot recover it back, has no appli-
cability to usurious transactions. Nor has the doctrine of
*Application of Payments* any application in this case. It is
of the essence of this doctrine that there must be more than
one debt to which the debtor has the voluntary opportunity
or choice to direct his payments to be applied. Here there
was but one debt, the interest, to which Meem could apply
payments; the principal was not due."

In support of this position, *Mosely* v. *Brown,* 76 Va. 419 ;
*Turner* v. *Turner,* 80 Va. 379 ; and *Association* v. *McKnight,*
35 Pa. State 472; *Harris* v. *Bressler,* Supreme Court of
Illinois (10 N. E. Rep. 188), and *Norvell* v. *Hederick,* 21 W.
Va. 525, are cited.

*Mosely* v. *Brown,* 76 Va., was a case in which there was
no usury in the inception of the contract, but the illegal rate
of interest was paid after the maturity of the notes, to pro-
cure forbearance from the lender, and it was there held that
the usurious premium may be recovered back, or, what was
said in that case amounts to the same thing, be set off against
the principal of the debt forborne. Judge Burks, in deliver-
ing the opinion, says (at page 423) : " Though once doubted,
it has long been regarded in England and in this country as
the settled rule, both at the common law and in equity, that
the borrower who has paid usurious interest may recover it
back. He is put upon terms, however. He shall not get
back the principal or the legal interest. He must account
for these. His remedy is limited to the excess, the usurious
premium. This doctrine was recognized by this court in
*Clarkson's Adm'r* v. *Garland,* 1 Leigh 162, and in *Spengler*
v. *Snapp,* 5 Leigh 478."

This states the proposition with admirable clearness and

precision, and leaves no room for doubt that the extent of the borrower's remedy is the recovery of the usurious premium, or the right, which as the learned judge has remarked is the same thing, to set it off against the debt forborne.

Quoting from the same page of the opinion, he says: "In a few of the States a different rule prevails, but this is owing to statutory regulations, as an examination of the decisions we think will show." Among a number of authorities cited is to be found *Association* v. *McKnight*, 35 Pa. St. 470, also referred to in *Meem* v. *Dulaney*.

In *Mosely* v. *Brown*, p. 426, it is said: "According to the facts as certified in the case before us, there was no usury in the notes and the deed of trust given to secure them. They are valid securities in the hands of the purchaser. But it is just as clear upon those facts, that the transactions for forbearance are usurious. These transactions were subsequent to and distinct from the original creation and securing of the debts, and therefore the debts are not tainted with the usury in the subsequent forbearance, and the purchasers are entitled to the principal money with legal interest and to the benefit of the securities, but they should be required to allow for what was paid for the forbearance, to be applied first to the extinguishment of the legal interest and the excess to the principal of the debt."

We have extracted copiously from the case of *Mosely* v. *Brown*, because it is the well considered deliverance of a learned and able judge, who had carefully examined the decisions of the courts not only of this State, but of our sister States and of England, and has given us the results of his investigation in a clear and satisfactory opinion.

The extent of the relief afforded in that case was that the debtor was required to account for legal interest, and the excess of his payments, over and above legal interest, was credited upon the principal sum due; and it must ever be borne

in mind that in the opinion of the court that decided *Mosely* v. *Brown* there was no distinction to be taken between the right to recover back interest and the right to appropriate the payment of interest to the principal, and that at the time of that decision what is now section 2823 of the Code had been omitted by the Legislature in the Acts of 1874, and was not restored until the enactment of the Code of 1887.

In the case of *Turner* v. *Turner*, 80 Va. 379, it was held that " where payments have been made upon an usurious contract, which are merely credited upon the bond, the borrower is entitled to have such payments deducted from the principal sum loaned or forborne." In other words, as was stated in *Gill* v. *Rice*, 31 Wis. 553, which was cited in *Turner* v. *Turner*, it was decided that " where no directions have been given by the debtor, the law would apply the payment upon an usurious contract to the extinguishment of the principal sum loaned." In *Turner* v. *Turner* there had been no application of payments either by the debtor or creditor. It was left to the court to make the application, and it was properly applied to the extinguishment of the principal sum loaned, and not to the interest, which, under our statute, is deemed to be for an illegal consideration. The case of *Norvell* v. *Hederick, supra*, is to our apprehension express authority to the contrary of the propositions which are asserted in *Meem* v. *Dulaney.*

The case of *Harris* v. *Bressler*, 119 Ill. 472, seems in some degree to support the doctrine of *Meem* v. *Dulaney*, the principle recognized being that " while usurious interest voluntary paid cannot be recovered back, still, as long any part of the debt remains unpaid, the debtor may insist upon a deduction of all usurious interest paid therefrom." This seems to be the settled doctrine of the Illinois courts where the lender sues to recover an unpaid balance, and might have been cited in this State as persuasive authority in a court of

equity, while that court administered the relief given in *Marks* v. *Morris*, and while section 12 of the Code of 1873 was in force; but even in Illinois "it is settled that a party making application to a court of equity for affirmative relief against an usurious contract is entitled to such relief only upon the condition that he shall pay, or offer to pay, the principal sum with legal interest." *Fowler* v. *Trust Co.*, 141 U. S. 406.

The citation from 2 Chitty is merely to the effect that the creditor cannot apply a payment in satisfaction of what never constituted a legal or equitable demand. This we have already conceded, but this limitation upon the right of the creditor to apply a payment which the debtor has not specifically appropriated is manifestly in the interest of the debtor, and cannot be perverted into an abridgment of his power to do as he sees fit with his own.

We will add that Judges Lewis and Richardson dissented from the majority of the court in *Meem* v. *Dulaney ;* and when we consider further that the decision of the Circuit Court, rendered by an able and experienced judge, was reversed, the authority of that case is greatly impaired.

We have thus reviewed all the authorities relied upon in the opinion in *Meem* v. *Dulaney*, and think we have shown that they do not sustain the positions for which they are cited, but, on the contrary, we rely upon them in support of the opposite conclusion.

We do not deem it necessary to add anything to what has been said upon the subject of what is intended when the term "usurious interest" is used, or as to the validity of payments made upon illegal contracts. We shall, however, advert briefly to what is said in *Meem* v. *Dulaney* upon the subject of application of payments.

The settled rule upon this subject is that the debtor may apply the payment when made. If he fails to exercise this right, the creditor may make the application, and if it is made

by neither the debtor nor the creditor, the duty then, and not otherwise, devolves upon the court when the question comes before it, and the application is then made upon well established principles. See *Pope* v. *Transparent I. Co.,* 91 Va. 79, and authorities there cited. Of course, as between an undisputed debt and one resting upon an illegal consideration, the court would apply it to the former, as in the case of *Turner* v. *Turner,* just referred to; but where the parties themselves have by their voluntary act, without imputation of fraud or mistake, applied a payment to a debt resting upon an illegal consideration, the courts will not disturb what they have done, except, as has been so often stated, in the case of usury, and there the interference of the courts is limited to the usurious excess. It might well be admitted that in *Meem* v. *Dulaney* and *Edmunds's Ex'ors* v. *Bruce,* as well as in this case, the doctrine of the application of payments did not and does not arise, not for the reason given in *Meem* v. *Dulaney,* that the application of that doctrine necessarily implies the existence of more than one debt, but because the parties have precluded the agitation of any such question by agreeing upon the application to be made. But is it true that there was not more than one debt, or (to express ourselves with greater exactness) more than one application, which could have been made of the money paid in *Meem* v. *Dulaney?* There was a principal sum not due, and there was interest which had accrued upon it. The money with which the payment was to be made was under the absolute control and dominion of the borrower. When he parted with it he could make such terms with regard to its application as to him seemed best. He could have retained it, or he could have paid it to Dulaney to be appropriated to the principal, though not yet due. Surely the law does not prohibit a debtor to anticipate the maturity of a debt and its payment before maturity with the assent of the creditor. There would have

been nothing illegal in that position had it been assumed by
the borrower, but this he did not choose to do.  He paid it
to the lender, and agreed with him that it should be applied
in discharge of the interest accruing upon the principal which
he owed him.

There is another view of the question which seems effec-
tually to dispose of the reasoning in *Meem* v. *Dulaney*, so far
as it rests for support upon the fact that the principal of the
debt was not due.  A debtor has no right to require his cred-
itor to accept part payment of a debt.  He may offer a part
to his creditor, with directions to place it to the credit of the
principal, and if the creditor accepts it he must apply it as
directed, even though the interest be unpaid ; but he may safely
decline a partial payment on his debt, and there can be no
valid tender which will support a plea of tender unless it be
of all that is due.  So that whether the Dulaney debt was
due or not due was a fact of no importance, since it rested
with Dulaney to say whether or not he would accept a par-
tial payment upon his principal, and with his assent the par-
tial payment would have been effectual whether the debt
to which it was to be applied was or was not due.

Usury laws are enacted as shields to protect debtors against
the exactions of greed and avarice ; they are not designed as
weapons of offence, by which the borrower shall be enabled
to practice what is in effect at least a fraud upon his creditor.

There is one other argument which should be noticed,
though we cannot think it was much relied upon.  It was
contended that no interest accrues in contemplation of law
upon a contract reserving a greater rate than that allowed by
law; that the element of illegality destroys the capacity to
breed interest and stamps the contract with infertility.  The
answer to it is to be found in the whole course of judicial deci-
sion in this and other States wherever the law applicable to
usurious contracts has been considered by the courts, from our

earliest judicial history down to the case of the *Lynchburg Nat'l Bank* v. *Scott*, 91 Va. 652; and, if this be not sufficient, the statutes, without which no question could arise as to illegal interest, fully recognize the existence of illegal as well as legal interest. The case of the *Bank* v. *Scott* is a complete answer in itself to this contention; for, if no interest accrue upon an usurious contract, an idle controversy was there waged and decided.

But it is said that this conclusion will impair the efficiency of the laws against usury; that the pains and penalties of the law as thus administered will be so far diminished that they will fail to deter money-lenders from making usurious contracts, and the policy of the law will thereby be defeated. The answer to this is, first, that it is the duty of the courts to declare the law, and not to make it; that with its policy or impolicy they have no concern; and, secondly, that the efficiency of a law depends upon the vigor with which it is administered and the certainty with which such penalties as it imposes are inflicted. From our earliest history down to 1874, upon proof of usury, the whole contract, principal and interest, was declared void. Nothing could be recovered, and during all that period there was a constant struggle upon the part of the courts to harmonize the administration of the law with their ideas of justice and right. In courts of equity the law against usury was virtually repealed whenever the debtor had to come into that forum for assistance, and the result of that struggle has been that the Legislature has changed the penalty of the law, which imposed a forfeiture of the principal and interest, and has declared that usurious contracts "shall be deemed to be for an illegal consideration as to the excess beyond the principal amount so loaned or forborne," and it now becomes possible, for the first time, to bring the relief afforded in courts of law and equity into harmony.

The result of this lengthy, and it may be tedious, inquiry

into the statute law of this Commonwealth, and the decisions of this and other courts upon the subject under investigation, leads us to the following conclusions :

1. That whether the suit be prosecuted at law or in equity, if usury be established, the lender can only recover the principal sum loaned or forborne.

2. That where payments have been made upon an usurious debt, and the debtor has failed to apply the payment specifically, the court should first eliminate the usury, if any, from the principal of the debt, and apply the payment to the sum actually loaned or forborne.

3. Where payments have been made upon a debt upon which a greater rate of interest than that allowed by law is reserved in the contract, or received in order to procure the forbearance of the lender, and the borrower himself applies the payment to the interest, or the lender makes the application with the assent of the borrower, the appropriation so made will not be disturbed unless within one year thereafter a suit be instituted by the borrower for its recovery, or a suit be brought by the lender within that period, in which case the borrower could, of course, set off the demand for which he might have sued.

4. Where there is usury in the contract, as distinguished from the reservation of a greater rate of interest than is allowed by law, as where the contract is expressed to be for a greater sum than that actually loaned or forborne, in a suit either by the lender or borrower, at law or in equity, it is the duty of the court, usury being established, to eliminate the usurious principal, and then apply the rule as to payments as hereinbefore declared, applying all unappropriated payments in satisfaction of the principal sum justly due, and leaving undisturbed such payments as the parties have themselves applied, and upon the principal so ascertained interest should be allowed at the rate of six *per cent. per annum* from the

date of the judgment or decree.   See *King* v. *Buck*, 30 Gratt. 828.

 . In this case nothing should have been credited upon the principal, and the decree of the Circuit Court should have been in favor of the appellant for the principal sum due, with interest from the date of the decree.*

*Reversed.*


RIELY, J., dissenting :


I regret that I am unable to agree with my brethren.   My examination and study of our statutes upon usury and of the authorities have led me to the opposite conclusion.   The decision, to my mind, is *in effect* largely a repeal of a statute that has stood without any material change for more than a hundred years, and overturns a line of decisions extending back to *Scott* v. *Young*, 4 Rand. 415, and coming down to the recent case of *Edmunds's Ex'ors* v. *Bruce*, 88 Va. 1007. The operation of the statute may be, and doubtless is, harsh, but the law-making power, notwithstanding the decisions of this court, has not seen fit to change it.   It is the province of the Legislature to make or repeal laws ; ours, to expound them.

My brethren are firm in their conviction of the correctness of the decision made to-day, and a dissenting opinion, embodying my views, could serve no good purpose.   I shall, therefore, content myself with this formal dissent.

---

* NOTE BY KEITH, P.—It is said in the opinion that the statute law rendered usurious contracts void as to both principal and interest until 1874.   This is substantially though not strictly accurate.   In 1872 an act was passed which amended the law referred to and made usurious contracts void only as to the interest in excess of six *per cent. per annum*.   This was again amended in 1874, since which time it has continued to be as it now appears in section 2818.