98 | 159
98 | 473
98 | 728
98 | 159
100 | 422
100 | 643
98 | 159
101 | 61
98 | 159
j105 | 769

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FISCHER v. LEE AND OTHERS.

### MARCH 15, 1900.

1. FRAUDULENT CONVEYANCES—*Knowledge of Fraud or Notice to Grantee.*
   Proof of the fraud of a grantor or transferer of property is not
   sufficient of itself to avoid an assignment or transfer thereof where
   value has been paid, but it must also be proved that the grantee or
   transferee had notice of the fraud or evil design of his vendor, or
   of facts and circumstances naturally calculated to excite suspicion
   in the mind of a person of ordinary care and prudence, and which
   would naturally prompt him to enquire before consummating the
   purchase, and that such enquiry, if diligently pursued, would have
   led to the knowledge or notice sought to be imputed.

2. PLEDGES—*Fraud—Notice to Pledgee.*—Pledgees for value without no-
   tice are entitled to the same protection as other *bona fide* pur-
   chasers, and though notice may be inferred from circumstances as
   well as proved by direct evidence, yet the proof must be such as to
   affect the conscience of the pledgee, and must be so strong and clear
   as to fix upon him the imputation of bad faith.

3. PLEDGES—*Fraud—Notice to Pledgee—Usurious Interest.*—The mere fact
   that the apparent owner of property is willing to borrow money on
   it at a usurious rate of interest, even if it were evidence of the
   insolvency of the borrower, does not charge the lender with the
   duty of inquiring whether the borrower had paid for the property.
   It only imposes upon the lender such inquiry as is suggested by the
   facts which are known or disclosed in the transaction. There must
   be such connection between the facts known or disclosed and those
   to be discovered upon inquiry that the former may be said to fur-
   nish a clue to the latter. The lender is not required to inquire into
   the motives and purposes of the borrower in procuring the loan,
   without the knowledge of other facts to put him upon such inquiry.
   In the absence of any lien, or notice of defective title, the usurious
   lender is not required to inquire into the source of the borrower's
   title.

Statement.

4. TRUSTEES—*Bona Fide Purchaser—Fraud—Burden of Proof.*—The trustees in a deed of trust to secure money are purchasers for value, and the burden of proving knowledge of fraud on the part of the grantor in the deed is on the party alleging it.

5. CHANCERY PLEADING AND PRACTICE—*Bill Charging Fraud—Failure to Answer.*—If a bill contains definite, specific and express charges of facts constituting fraud on the part of the grantee in a deed of trust, and he fails to answer it, the bill should be taken for confessed, and the deed be set aside.

6. TRUSTS AND TRUSTEES—*Description of Property.*—A deed of trust which conveys certain designated pianos and also "all pianos, organs, and all other merchandise owned by him (grantor) and temporarily stored elsewhere," is sufficient to cover the interest of the grantor in "other pianos stored elsewhere," upon which there may be prior liens.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced January 9, 1899, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

In October, 1894, R. B. Lee applied to the appellants for a line of credit to the amount of $5,000. They required of him a statement of his financial condition, which he promptly furnished in writing, showing that he owned not less than $25,000 worth of personal property, and a like amount of real estate, above all liabilities. During the months of October, November and December, 1894, he purchased of appellants a large number of pianos, upon which he owed at the time of the institution of this suit $5,536.67. In January, 1895, appellants shipped to said Lee, on his order, seventeen other pianos of the aggregate value of $3,615. These pianos were shipped at different dates during the month of January—not exceeding three pianos on any one day. The appellants claimed that the possession of these pianos was obtained from them by fraud and misrepresentation on the part of said Lee; that the title never passed from them; and that they are now entitled to recover possession.

Lee pledged a number of the pianos he had gotten from appellants, including many of those shipped in January, to various persons, among them to George E. Crawford & Co., to Young Jones and to the First National Bank of Richmond, to secure advances of money made by them. On February 8, 1895, Lee made a general deed of assignment, conveying to Cutchins & Brandt, trustees, certain real estate and personal property in trust to secure the payment of his debts, giving preferences and designating the order of payment. Amongst other property the deed conveyed all his stock of pianos, organs, musical instruments and merchandise in his storehouse in Richmond, and also "all pianos, organs and other merchandise owned by him and temporarily stored elsewhere."

This suit was brought to set aside, as fraudulent, the several pledges or bills of sale of pianos made by Lee, and also the general deed of assignment. The appellants claimed the right to recover possession of the pianos shipped in January, on the ground that they had never parted with their title. They also claimed that the deed made in February was fraudulent, and should be set aside, and they should have a lien from the date of filing their bill on the property thereby conveyed. The other facts of the case, and the state of the pleadings, as to the allegations and denials of fraud, are sufficiently set forth in the opinion of the court.

*Coke & Pickrell*, for the appellants.

*Leake & Carter* and *Smith, Moncure & Gordon*, for the appellees.

RIELY, J., delivered the opinion of the court.

It cannot be doubted upon the evidence that the pianos were obtained from the appellant by the appellee, R. B. Lee, under false pretences. If the controversy were alone between him and the appellant, the transaction could not possibly be upheld. The

fact that he bought the pianos with the express, as well as implied, representation that they were needed for sale in the regular course of trade, of which he was experiencing a strong revival, and endeavoring by urgent letters and telegrams to hasten their shipment to supply sales and meet demands for pianos, but promptly, after their arrival in Richmond, pledged them for loans of money at usurious rates of interest, removing many of them immediately upon their arrival directly from the depot to storage warehouses, where pledges of them were forthwith created, to say nothing of gross misrepresentations as to his financial condition and other inculpatory facts, is sufficient to stamp the affair with fraud.

Proof of the fraud of a grantor or transferrer of property is not sufficient, however, to avoid an assignment or transfer thereof, where valuable consideration has been paid, but it must be also proved that the grantee or transferee had notice of the fraud or evil design of his vendor. Wait, Fraud. Conv., sec. 271; *Arbuckle* v. *Gates*, 95 Va. 802; *Jones* v. *Simpson*, 116 U. S. 609; *Lamar's Ex'r* v. *Hale*, 79 Va. 147; *Batcheldor* v. *White*, 80 Va. 103; *Snyder* v. *Grandstaff*, 96 Va. 473.

The respective answers of Crawford & Co. and Young Jones deny all knowledge of any fraud practiced by Lee in purchasing the pianos from the appellant, or of any fraudulent design in pledging the same to them for loans of money. The testimony of Pizzini, of the firm of Crawford & Co., who was its financial manager, made the loans, and took the pledges to his firm, and of Jones also, was to the same effect. It was also shown that the pledges of pianos made to them, respectively, were for valuable consideration. They were given for loans of money actually made, and duly consummated according to law. Pledgees for value, without notice, are entitled to the same protection as other *bona fide* purchasers. *Babcock* v. *Lawson*, 4 Q. B. Div. 394.

It was, however, earnestly argued that the pledgees had notice of facts that should have put them upon inquiry, and that the

diligent pursuit of such inquiry would have conducted them to a knowledge of the fraud of their pledgor.

It is very true that it is not necessary, in order to avoid a conveyance or transfer of property upon a charge of fraud, to prove that the grantee or transferee had actual knowledge of the fraudulent intent of the party making the conveyance or transfer. There is no doubt that it is a principle of law, and a just one, that if a party has knowledge of facts and circumstances which are naturally calculated to excite suspicion in the mind of a person of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the fact with notice whereof he is sought to be charged, he will be considered to be affected with such notice, whether he made the inquiry or not. A knowledge of facts sufficient to put a person upon inquiry is equivalent, in contemplation of law, to actual knowledge by him of the hidden facts to which the diligent pursuit of the inquiry suggested by the known facts would have led. If he had made the inquiry, he would have discovered the fact with notice whereof he is sought to be charged, and, if he neglected to make the inquiry, his negligence cannot excuse him upon the ground of a want of notice. In neither case can he be considered a *bona fide* purchaser. *Ferguson* v. *Daughtrey*, 94 Va. 308; *Atwood* v. *Impson*, 20 N. J. Eq. 156; *Clements* v. *Moore*, 6 Wall. 312; Wait, Fraud. Conv., sec. 379.

But while the fact of notice may be inferred from circumstances as well as proved by direct evidence, yet the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the imputation of *mala fides*. *Vest* v. *Michie*, 31 Gratt. 149; *Arbuckle* v. *Gates*, 95 Va. 802.

It was proved that nearly all of the pianos in question were, immediately upon their arrival in Richmond, pledged to Craw-

ford & Co. and Young Jones for loans of money, many of them being removed directly from the depot to storage warehouses for that purpose, and that others were so pledged shortly after their arrival, but there was an entire failure to affect the pledgees with knowledge of these facts. On the contrary, they deposed that they were wholly ignorant that any pianos were directly moved from the depot to storage warehouses to be pledged, but that such as they saw and examined before making the loans were in Lee's salesroom, and the others were represented by him to be in stock in the basement of his salesroom.

It appears that these loans were made at usurious rates of interest, and it was contended that this fact was sufficient in itself to put the pledgees upon inquiry, and that inquiry, if duly prosecuted, would have led to a discovery of the fraud of the pledgor. Let it be conceded, for the sake of argument, that this fact was sufficient to put the pledgees upon inquiry. The question remains, upon what inquiry did it put them? What is the inference to be drawn from a willingness to borrow money at an exorbitant rate of interest, and to pledge property to secure its payment? Does it do more than suggest that the borrower is in embarrassed circumstances, or is perhaps insolvent? Let it be that it goes to the extent of suggesting insolvency, and that inquiry would have led to a discovery of that fact; still, insolvency alone does not prevent or vitiate a transfer of property for value. Insolvency does not deprive the owner of the right to dispose of his property, unless the sale or transfer is made with the intent to delay, hinder, or defraud his creditors; and the law does not then invalidate the title of the purchaser or transferee, if the sale or transfer is for valuable consideration, and the purchaser or transferee has no notice of the fraudulent intent of the grantor. *Ferguson* v. *Daughtrey*, 94 Va. 308; *Williams* v. *Lord*, 75 Va. 402; *Mayo's Ex'r* v. *Carrington's Ex'r*, 19 Gratt. 107; Wait, Fraud. Conv., sec. 239; Bump, Fraud. Conv., sec. 179, 183.

It was contended, however, that the duty of inquiry would not stop at insolvency, but required that the pledgees should inquire whether the property proposed to be pledged was paid for, and that this would have led to the discovery that the pianos had not been paid for, and to the further discovery of the fraud committed in their purchase. The law of constructive notice does not impose on a purchaser such latitudinous inquiry upon mere knowledge that his vendor is in greatly embarrassed circumstances, or even that he is insolvent. It only imposes upon a purchaser such inquiry as is suggested by the facts which are known or disclosed in the transaction. There must be such a connection between the facts disclosed and the further facts to be discovered upon inquiry that the former may be said to furnish a reasonable and natural clue to the latter. To go beyond this would extend the doctrine of constructive notice beyond the limit it has been carried by the courts, and would, especially in the case of personal property, unduly hamper and embarrass its transfer, and interfere with the freedom of trade. *Jones* v. *Smith*, 1 Hare, 43; *Ware* v. *Lord Egmont*, 4 De Gex, M. & G. 460; *Williamson* v. *Brown*, 15 N. Y. 334; *Birdsall* v. *Russell*, 29 N. Y. 220; *Le Neve* v. *Le Neve*, 2 White & T. Lead. Cas. Eq., pt. 1, pp. 160-162; Wait, Fraud. Conv., sec. 379.

There was an absolute sale of the pianos by Fischer to Lee, and the delivery of possession before the creation of the pledges. There was no reservation of title by Fischer, nor creation of any lien for unpaid purchase money. There is no doubt of the fact that there was an absolute parting by Fischer with all right of property in the pianos. It was not the case of a parting with the mere possession and not the title, in which case Lee would not acquire and could not transfer title to the property. *Steamship Co.* v. *Burckhardt*, 31 Gratt. 664; *Williams* v. *Given*, 6 Gratt. 268.

Jones deposed that he had no knowledge that the pianos were not paid for. Pizzini testified that Lee told him that they were

paid for; that they were on his hands, and he was unable to realize anything on them, and was in need of money; and it was proved that Lee had long been a large dealer in pianos and other musical instruments in the city of Richmond, and borne the reputation of being an honest and reliable man. Pizzini examined the records of the proper courts to ascertain if there were any liens on the property, but found none; and the record contains no evidence that either of the pledgees was aware that the complainant claimed any debt against Lee for the purchase of the pianos, or that Lee owed anything for them. Crawford & Co. and Young Jones were without actual notice of the fraud of Lee, and were not chargeable by the law, under the circumstances shown, with constructive notice thereof.

It was further argued that the exaction of usurious interest, and the agreement of Lee to pay it put the pledgees upon inquiry, and devolved on them to prove that they were *bona fide* holders for value, upon the ground that a usurious contract is violative of the expressed policy of the State. In support of this contention we were cited particularly to *Ramsdell* v. *Morgan,* 16 Wend. 574; *Saltmarsh* v. *Tuthill,* 13 Ala. 390; *Carlisle* v. *Hill,* 16 Ala. 398.

The answer to this position, in the first place, is that the pledges were clearly shown to be upon valuable consideration; and in the next it appears that, at the time of the decision of the first-named case, the statute of New York not only avoided all contracts for usurious loans, but declared that "all deposits of goods, or other things whatsoever, upon a usurious consideration, shall be void." In that case, the auctioneer having received the goods upon an advance of money at usurious interest, the pledge of the goods was void, and he was without any right to withhold them. As to the other cases, the statute of Alabama also made usurious contracts as "to the whole interest" likewise "void and of no effect." But in Virginia no part of a usurious contract is void, but by statute is only

"deemed to be for an illegal consideration as to the excess beyond the principal amount so loaned or forborne." Code, sec. 2818; *Munford* v. *McVeigh's Adm'r*, 92 Va. 446, 454, 23 S. E. 857.

The difference between the statutes of those States and our own renders inapplicable the principle of those decisions to the case before us, but, if their applicability were conceded, we would still be confronted with the question as to the inquiry devolving upon the pledgees. No rule can be laid down upon the doctrine of inquiry with respect to constructive notice, except that there must be such a connection between the facts known or disclosed and those to be discovered upon due inquiry that the former can be said to constitute a reasonable clue to the latter, for the extent of the inquiry to be made in any case depends necessarily upon the known or disclosed facts. Ample provision is made by statute for the reservation of title to, or the creation of liens upon, personal property, and a mere agreement to pay usurious interest upon a loan of money, and to pledge for its repayment personal property, in the possession of and claimed by the borrower to be his own, in addition to the obvious propriety of examining the public records for liens upon or defect of title to the property, is not sufficient to require him to go further, and inquire into the motives and purposes of the borrower in procuring the loan, without the knowledge of other facts to put him upon such inquiry. It would be going too far to hold that such an agreement, by itself, imposed upon the pledgee the duty of inquiring into the source of the title of the pledgor to the property, from whom he acquired it, the facts and circumstances of its acquisition, and, if by purchase, whether he has paid for it, and the disposition intended to be made of the loan.

The trustees in the deed of assignment of February 8, 1895, Sol. Cutchins and Jackson Brandt are, under our decisions, purchasers for value (*Arbuckle* v. *Gates*, 95 Va. 802; and *Chap-*

*man* v. *Chapman,* 91 Va. 400), and the burden of proof was therefore upon the complainant to prove that they had notice of the fraud of Lee.

Cutchins in his answer denied all knowledge of the fraud alleged in the bill, and also testified that he had no knowledge that the pianos had not been paid for, or that the complainant had any claim against Lee for them. He also testified that he knew nothing whatever of Lee's financial condition, and there was no evidence to the contrary. He learned from Lee, during the preparation of the deed of assignment, that he had pledged some few pianos to Young Jones, and that he had the right to redeem them. He learned nothing further of the nature or extent of the pledges, but in order to save for the benefit of the creditors any right possessed by Lee, after specifying in the deed of assignment the stock of pianos, musical instruments, and merchandise in his store, added the clause, "as well as all pianos, organs and other merchandise owned by him and temporarily stored elsewhere," in order to cover any pianos that had been pledged, which provision would clearly have the effect to vest them in the trustees, if the pledges, or any of them, were invalid. Brandt, the other trustee, did not answer the bill, because, as he testified, he did not regard himself as having accepted the trust, and certainly had not acted, as Cutchins was appointed on the same day receiver in a suit to wind up the trust; but he testified, being called as a witness for the complainant, that he was ignorant of any fraud whatever, though admitting that he was aware of Lee's financial straits. The evidence, without going into a more extended discussion of it, is insufficient to deprive the trustees of the position of being *bona fide* purchasers for value. ·

The amended bill, which was filed for the express purpose of making the First National Bank a party defendant, and having rescinded a pledge made to it by Lee of three of the pianos purchased from the complainant, charges specifically that the

bank knew of the insolvency of Lee, that the complainant had not been paid for the three pianos pledged to it, and that they were bought by Lee for sale in the regular course of business, but that they were removed by him from the railroad depot upon their arrival at Richmond to a storage warehouse, and pledged for a loan of money. These allegations are definite, specific, and express charges of facts constituting fraud. The bank filed no answer. The bill was therefore taken for confessed, and the said allegations were to be treated as true. *Price* v. *Thrash,* 30 Gratt. 515; *Welsh* v. *Solenberger,* 85 Va. 441.

The complainant would be entitled to have the pledge to the bank of the three pianos set aside, and the same restored to it, but for the specific provision in the deed of assignment, heretofore adverted to, conveying "all pianos owned by Lee and temporarily stored elsewhere," as well as those in stock in his store, to the trustees; but they being, as we have seen, *bona fide* purchasers for value, the invalidity of the pledge to the bank cannot operate to the benefit of the complainant.

Upon a consideration of the whole case, the decree appealed from must be affirmed.

*Affirmed.*