## Marr *versus* Marr.

1. The report of a referee under the Act of May 14th, 1874 (P. L. 166), should state separately and distinctly the facts found, and the conclusions of law resulting from the facts.

2. The fact that a debtor voluntarily paid more than six per cent. interest, and made a settlement on that basis, does not preclude him from setting up the defence of usury to an action brought to enforce such settlement.

3. When the consideration of a confessed judgment is made up in part of usury, the court will open the judgment and afford relief.

[Marr v. Marr.]

1. Hopkins v. West (2 Norris, 110), and Montague v. McDowell (3 Out., 268), distinguished.

April 30th, 1885.   Before MERCUR, C. J., GORDON, PAX-SON, STERRETT, GREEN and CLARK, JJ.   TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Northumberland county*:   Of January Term 1885, No. 445.

Judgment was entered May 15th, 1877, upon a judgment note, in favor of W. H. Marr, to use of Frank S. Marr, assignee, against A. G. Marr, for $8,000.   Upon petition of defendant, the judgment was opened, and an issue directed to determine how much, if anything, was due the plaintiff on said judgment.   The case was, by agreement, referred to William I. Greenough, Esq., as referee under the Act of May 14th, 1874 (P. L., 166).   The referee found that there was due on the judgment the sum of $10,155.27, and directed judgment to be entered accordingly.   This judgment was reversed, and a procedendo awarded, chiefly because the report of the referee did not comply with the requirements of the Act. (See Marr v. Marr, 7 Out., 463.)   The case came before the referee again, and the facts as found by him were substantially as follows:   A. G. Marr, the defendant, conducted a banking business at Shamokin, and from time to time received large sums of money from W. H. Marr, at high rates of interest, usually fifteen per cent.   These transactions covered a period of several years, and on January 1st, 1875, A. G. Marr gave W. H. Marr a judgment note, with a warrant of attorney to confess judgment, for $12,013.17, "subject to the rectification of any error, if such there may be found, upon a further settlement."   On July 12th, 1876, certain disputes, as to the character of the business relations of the parties and the amount, having arisen, an alleged settlement was had of the account between W. H. Marr and William A. Marr, attorney for A. G. Marr, whereby W. H. Marr agreed to take $8,000 in full of all demands.   A. G. Marr repudiated this settlement, alleging that upon a fair settlement at that date, allowance being made him for payments of interest in excess of six per cent., it would appear that he was not indebted to W. H. Marr, and he further alleged that his attorney had exceeded his authority.   W. H. Marr still retained the judgment note for $12,013.17 after the alleged settlement of July 12th, 1876; subsequently it was indorsed as follows:—

"This judgment is held as collateral security for the enforcement of an agreement dated the 12th day of July, 1876, between Dr. William H. Marr, of Lewisburg, Pa., for the collection of eight thousand dollars, with interest from the first

[Marr *v.* Marr.]

day of January, 1877, in manner as set forth in the above re-
ferred to agreement.

August 14, 1876.

Signed                    WM. H. MARR,
                          W. A. MARR,
                          Attorney for A. G. Marr."

This judgment note was afterwards assigned by W. H.
Marr to Frank S. Marr, who had the judgment entered up,
and issued execution thereon for $8,000 and interest. The
court, upon application of defendant, opened the judgment,
and the case was referred to the present referee, who found,
inter alia, that A. G. Marr having voluntarily assented to a
settlement on a basis of usurious interest, such settlement
could not now be inquired into, and accordingly he awarded
to the plaintiff $7,424.82, being the amount of the judgment,
with interest, less a payment on account.

Judgment was subsequently entered on this award, when
defendant took this writ, assigning for error the decision of
the referee and the judgment entered thereon.

*S. P. Wolverton*, for plaintiff in error.—The second report
of the referee is but little better in form than the first; he
has stated no conclusions of law whatever, which renders the
report fatally defective. (See the opinion of Mr. Justice
GREEN in this case, 7 Out., 468.) The plaintiff was entitled
only to receive from the defendant the amount of money
loaned, with legal interest upon it. The defendant may go
back of the judgment, and treat the usury as payment upon
the principal: Wood's Appeal, 11 W. N. C., 30; Chamberlain
*v.* McClurg, 8 W. & S., 31; Fitzsimons *v.* Baum, 8 Wright,
32; Campbell *v.* Sloan, 12 P. F. S., 485. It is immaterial in
what form or pretence the usurious interest is covered.

*Andrew H. Dill* and *W. H. M. Oram*, for defendant in error.
—A stipulation by which a person drawing money to be used
in business was to be liable for losses, prevents the transaction
from being usurious: Morisset *v.* King, 2 Burr, 891; Philip
*v.* Kirkpatrick, Addison, 125; Parsons on Notes and Bills, 412.
Where a judgment note has been paid either by money or by
giving a new judgment, as in this case, the former judgment
is conclusive, and in proceedings upon the new judgment can-
not be attacked, though it manifestly appeared that it includes
usurious interest: Hopkins *v.* West, 2 Norris, 110; Montague
*v.* McDowell, 3 Out., 265; Carlisle *v.* Bindley, 8 W. N. C., 69.

Mr. Justice PAXSON delivered the opinion of the court,
May 25th, 1885.

[Marr v. Marr.]

When this case was here before (see Marr v. Marr, 7 Out., 463), it was reversed, principally upon the ground that the report of the referee did not conform to the Act of Assembly. Among other defects there was no statement of facts and conclusions of law separately, as required by said Act. We might well reverse the case now, and send it back, for the same reason. The statement of facts and conclusions of law, so far as they have been found at all, are blended together; are not easily separated, and are very far from a compliance with the law. As, however, there appears to have been an attempt at such compliance, we will endeavor to make the best of it, and dispose of the case as it stands.

The referee has not found that the contract between the parties was usurious, yet the facts which he reports conclusively show it to be so. The defendant below was engaged in banking, and the loans made to him or his firm by William H. Marr were to assist him in carrying on that business. They were made at an admittedly high rate of interest, usually fifteen per cent. These transactions were continued for several years, and ended in an alleged settlement between William H. Marr and William A. Marr, as attorney for the defendant, on July 12th, 1876, by which the said William H. Marr agreed to take $8,000 in full of all demands. The defendant, however, repudiated this settlement, alleging that he did not owe the money, and that his attorney exceeded his authority. There had been a previous settlement on January 1st, 1875, when defendant gave William H. Marr a judgment note for $12,013.17 (subject to the correction of any error). This judgment note appears to have been retained by William H. Marr after the settlement of July 12th, 1876, and contains an endorsement that it was held as collateral for the "enforcement of the agreement of 12th July, 1876." This judgment note was subsequently assigned to Frank S. Marr, and execution issued thereon for $8,000 and interest. The court below, upon the application of the defendant, opened the judgment and let him into a defence, when the cause was referred to the present referee.

We have not recited, nor is it necessary, all the previous dealings between the parties, and settlements, or attempts at settlements, and the various notes given by the defendants at different times. The claim that is left is the residuum of all these transactions, and the serious question in the case is, whether the judgment as it now stands is tainted with usury.

The Master thought that the defence of usury was not available, because the defendant had voluntarily paid more than six per cent., and had settled with William H. Marr upon that basis. The authorities, however, do not sustain this position.

The payment of usurious interest is usually voluntary, at least so far as a payment can be called voluntary which is the result of a sort of moral coercion, and of that peculiar kind of influence which an exacting usurer exercises over his unfortunate victim so long as he has money to pay with or credit to lose. It is only when a debtor is driven to the wall that he sets up the defence of usury, and if it would not avail when the payments were voluntary, it could not often be successfully invoked. There is no merit in this position. The principle to be deduced from our own authorities is, that the excess of interest paid over six per cent. is the money of the borrower, which, when received by the creditor, he cannot retain, but holds for the use of the debtor: Heath *v.* Page, 13 P. F. S., 108. In the recent case of Earnest *v.* Hoskins, 4 Out., 551, it was said by our brother TRUNKEY: "The borrower is not bound to pay any interest in excess of six per cent. per annum, though he may have contracted to pay a greater rate. Any security given in payment or discharge of an usurious contract is equally void with that. The original taint attaches to all consecutive obligations growing out of the original usurious transaction, and none of the descendant obligations can be free from it if the descent can be traced. This principle was settled under statutes which totally avoided the contract. Under the Act of 1858, the money loaned, with lawful interest, is a valid debt, and only the excess of interest can be avoided; but that affects only the extent of the application of the principle," citing Campbell *v.* Sloan, 62 Pa., 481; Overholt *v.* The Bank, 82 Pa., 490. It is useless to multiply authorities upon so plain a proposition.

We are of opinion that the alleged settlements are no bar, and do not conclude the defendant. The money overpaid as interest is a payment on account of principal, and if both principal and interest have been paid, the excess of interest may be recovered back in a count for money had and received. The Act of 28th May, 1858, detaches the excess of interest from the debt, and it is recoverable by the debtor in assumpsit: Heath *v.* Page, supra. That a judgment was confessed for the amount supposed or claimed to be due, is not material. When such a judgment is made up in part of usury, the courts will open it and afford relief: Wood's Appeal, 11 W. N. C., 30. It is not the case of a judgment recovered for usurious interest, and afterwards paid and satisfied. Such were the cases of Hopkins *v.* West, 2 Norris, 110, and Montague *v.* McDowell, 3 Out., 265, cited by defendant in error. There was nothing of the kind here. There was a change of notes from time to time: taking up and renewing, but the taint of the usury

runs through it all.   In Campbell *v.* Sloan, 12 P. F. S., 481 it was said by SHARSWOOD, J., at page 485: "It can hardly be supposed, said PARKER, C. J., in Bridge *v.* Hubbard, 15 Mass., 96, that an usurious lender of money can screen himself from the facts of the case by giving up the security originally taken, and substituting another in its place.   If this can be done, much ingenuity is not required to evade and defeat the statute."

What we have said covers such of the assignments of error as relate to the question of usury.   We notice nothing in the remaining assignments that needs correction.   But for the reasons given, the judgment must be reversed, and the case sent back to the referee, with instructions to credit the defendant with all interest paid in excess of six per cent.

> The judgment is reversed, and a procedendo awarded.