# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RUCKDESCHALL V. SEIBEL, JR., AND OTHERS.

### November 20, 1919.

1. USURY—*Guaranty of Profits as Usury.*—If a transaction was an investment in a particular enterprise or business entitling the investor to a share of the profits, and the agreement as to the profits was in fact a guaranty of a minimum, but left the investor entitled to a greater profit, if made, so that in effect a partnership was created, and the agreement for profit was not in the nature of an agreement for interest, the transaction is not usurious.

2. USURY—*Evidence to Establish—Reasonable Doubt.*—Usury must be proved by a clear and satisfactory preponderance of evidence. To require proof beyond a reasonable doubt or "beyond a rational doubt to the contrary" is to require too severe a degree of proof.

3. ANSWERS—*Answer as Evidence—Usury—Case at Bar.*—Where a cross-bill exhibited as a bill of discovery charged usury, an answer under oath responsive to the cross-bill containing statements, which, if true, disclosed a transaction free of usury, is evidence against the charge of usury which must be overcome by the testimony of two witnesses, or one witness and corroborative circumstances, and a different state of facts established. But in the instant case the testimony of the respondent himself and another witness overcame the evidence furnished by the answer and established a different state of facts.

4. USURY—*Guaranty of Profits as Usury—Investment or Loan—Case at Bar.*—In the instant case it was established by a clear and satisfactory preponderance of evidence that the true nature of the transaction in question was not an actual investment in any particular enterprise or business, with a guaranty of a minimum amount of profits, but an agreement for a profit in the nature of interest on $9,000 loaned, which exceeded the rate allowed by law, and hence the obligation was unquestionably usurious.

5. USURY—*Cross-Bill for Discovery—Who May Maintain.*—One who occupies such a relationship to a debt that he can make the

defense of usury against the enforcement of it, can maintain
a cross-bill for discovery of the usury, and for relief therefrom
based on such discovery, independent of any statute affording
that remedy, the cross-bill admitting liability for the principal
sum justly due after the elimination of the usury, and in effect
admitting liability also for legal interest on such principal sum.

6. USURY—*Cross-Bill for Discovery—Who May Maintain—Section
2822, Code of 1904.*—Section 2822 of the Code of 1904 affords
the remedy by bill of discovery and relief from usury in terms
only to a "borrower." But the object of that statute was not
to confer jurisdiction upon equity of suits for discovery and
relief in cases of usury, for that jurisdiction existed inde-
pendent of statute. The mischief which the statute under con-
sideration was meant to cure was this, and this only: By the
rule of the forum no plaintiff could maintain a bill in equity for
discovery and relief from usury, without waiving all forfeiture
inflicted by the usury statute of the right of the lender to re-
cover the principal sum justly due and legal interest thereon.
The statute (section 2822, Code of 1904) was enacted to en-
able a plaintiff to maintain such a bill and not waive the pen-
alty inflicted by the usury statutes on the lender of forfeiture
of all interest on a loan tainted with usury, including interest
on the principal sum justly due as well as usurious interest.

7. USURY—*Cross-Bill of Discovery—Accommodation Indorser—Sec-
tion 2822, Code of 1904.*—Where an accommodation indorser
is entitled to make the defense of usury, he can have exhibited
a cross-bill in the name of the "borrower" for discovery of the
usury and for relief therefrom based on such discovery for his
use and benefit under section 2822, Code of 1904; and this being
true, equity, which looks at the substance and not at the form
of things, would not dismiss the cross-bill merely because filed
by the accommodation indorser in his own name.

8. USURY—*Who May Make the Plea—Surety on a Debt—Accommo-
dation Indorser.*—The plea of usury is a personal plea, which
can be made in general only by the borrower himself. But
this is not a rule which is universal in its application. It is
established by the great weight of authority that a surety on
a debt may plead usury, just as the principal may, where the
sole consideration of the promise of the surety is the same as
that of the principal debtor; that is, a loan or credit given to
the principal debtor. Such is the position of an accommoda-
tion indorser.

9. USURY—*Limitation of Actions.*—Section 2823 of the code of 1904
provides that if usury be paid the person paying the same
may in a suit brought within one year thereafter recover it.
Section 2821 of the Code of 1904 provides that where usury is

established in an action brought by the lender, the judgment shall be rendered for the principal sum only, and the same is true of the measure of relief granted in equity in a suit therein by the borrower for relief and discovery, namely, that the lender can recover the principal sum only. Such a suit is in its nature not a suit to recover back usury paid, but sets up the usury in equity as defense *pro tanto.*

10. USURY—*Effect at Common Law—Limitations of Actions.*—The effect of usury at common law was to render the whole contract void because of its illegality; the option of at any time refusing to pay and of retaining the whole sum, both of principal and interest, involved in an usurious transaction, continued to remain with the debtor at common law so long as the debt was unpaid, or was not novated, and the statutes in Virginia on the subject have gone no further than merely to limit what the debtor may in such case refuse to pay and retain.

11. USURY—*Limitation of Actions—Section 2823 of the Code of 1904.*—Section 2823 of the Code of 1904 has no application to suits in equity by the borrower or a surety for relief from unpaid usury, unless the plaintiff in such a suit seeks to have credited on the debt payments which have been in fact made and applied to the usurious principal or usurious interest. The statute does apply to such payments, but to no other; that is to say, it is plainly applicable only to usury which has been in fact paid to the person with whom the usurious contract was made, or to whom the usurious assurance was given, and where the usury which has been so paid is sought to be recovered back or applied as a credit on that portion of the debt which is justly due, which is, in effect, the same thing.

12. USURY—*Limitation of Actions—Pennsylvania Statute.*—It is plain from the language of 2 Stew. Purd. Dig. (Pa.) 1988, sec. 2, that it, like the Virginia statute, section 2823 of the Code of 1904, has no application to suits in equity by the borrower or a surety for relief from unpaid usury.

13. USURY—*Payment—Application of Payment.*—Where payments on an usurious obligation made by the maker and indorsers were not applied by them to the usurious portion of the debt or to any of the interest on such portion, and such application was not made by the payee, the court, where the usury is in issue before it, and is established, will, under the Virginia statute, eliminate the usurious principal and all interest, and will apply the payments on the principal sum justly due, and will allow the lender to recover only the balance thus found to be owing to him of such principal, without any interest.

14. APPEAL AND ERROR—*Harmless Error—Conflict of Laws.*—Where the holding of the court below being in accordance with the law

46

of Pennsylvania was more favorable to the appellant than he was entitled to under the law of Virginia, it is unnecessary for the appellate court to determine whether the law of Virginia or that of Pennsylvania governs, the appellee not complaining of such holding.

15. USURY—*Novation—Renewal of Obligation—Change of Form of Obligation.*—Where a new transaction is alleged to be tainted with usury inherent in another obligation and third persons are mixed up with the new transaction, the courts regard it with a favorable eye. On the coming in of a new party or parties to a new obligation, in which the relationship of the obligors is changed, as where a new party appears as maker of a new obligation, or the like, there is a *prima facie* presumption of fact that there has been a novation of the original obligation, notwithstanding that it may be true that the new obligation includes a part or the whole of the usury involved in a prior transaction.

16. USURY—*Novation—Renewal of Obligation—Change of Form of Obligation—Questions of Law or Fact.*—It is a question of fact as to whether the new obligation is executed for motives unaffected by the usurious consideration and is intended to supersede or supplant the original security.

17. USURY—*Novation—Renewal of Obligation—Change of Form of Obligation.*—The mere change of securities for the same usurious loan to the same party who received the usury does not purge the original illegal consideration. Every subsequent security given for a loan originally usurious, however remote or often renewed, is void.

18. USURY—*Novation—Renewal of Obligation—Change of Form of Obligation—Case at Bar.*—If the new obligation be in fact a new contract founded in whole or in part on a new consideration, although it be not in fact a valuable, but merely a meritorious, consideration, then indeed there will have been a novation of the obligation. But, in the instant case, the lender himself testified to the effect that the various notes given and accepted by him subsequently to the original note were all executed for the same consideration as was the original note and none other; that they were parts of one and the same transaction, and none of them were intended by any of the parties thereto to constitute a new contract.

19. USURY—*Novation—Confession of Judgment.*—Confession of judgment by an accommodation indorser upon an usurious note, where there was no new consideration moving to him, nor was it intended or considered by him or the lender at the time as a novation of the debt, merged the contract evidenced by the note on which it was entered, and the judgment became a sub-

sequent and different security; but the judgment, nevertheless, was wholly based on an obligation tainted with usury, and therefore the judgment itself was tainted with such usury.

20. USURY—*Judgment as Bar—Res Adjudicata—Default Judgment—Confession of Judgment.*—It is settled in Virginia that a judgment by default does not bar the judgment debtor from thereafter setting up the defense of usury against the judgment, when it is sought to be enforced in a court of equity. And there is no difference in principle between a judgment which is confessed and one by default; nor indeed between such judgments and any other judgment where the usury was not in fact pleaded or put in issue as a defense in the action which resulted in the judgment.

21. USURY—*Defense—Nature of the Defense.*—Although the defense of usury is generally a legal defense, it is in truth in its nature purely equitable in character, where it does not invoke any forfeiture of principal or interest justly due—does not avail of any statutory penalty creating such a forfeiture—but takes the equitable position that the lender is entitled to such principal and interest as is justly due, and, too, where a statute, as does section 2822 of the Code of 1904, expressly confers upon a court of equity jurisdiction in the terms which such statute uses.

22. USURY—*Equity—Res Adjudicata.*—If a debt is being enforced in a suit in equity against a party to the suit, and he fails to make the defense of usury before final decree, the principle of *res judicata* applies in that case in bar of the defense of usury.

23. USURY—*Form of Decree.*—On cross-bill by a judgment debtor for discovery and relief against usury, the decree did not fix the amount of the debt, but left the question still open, dependent upon the option given the judgment debtor, to retain and deduct the usurious principal and interest thereon, upon the payment of the balance of the judgment.

   *Held:* That the phraseology of the decree was open to objection and its form should be altered, so as to fix the amount of the judgment subject to the deduction of the usurious principal and all interest thereon.

24. USURY—*Proceeding by Judgment Debtor to Purge Judgment of Usury—Personal Judgment for Judgment Creditor.*—On cross-bill by a judgment debtor for discovery and relief against usury, there is no need for a personal decree in favor of the judgment creditor against the judgment debtor for the amount of the judgment which is found by the court to be justly due when purged of the usury. Such a decree would be but another judgment; the personal judgment already exists.

Appeal from a decree of the Circuit Court of Warren county, in which the defendant Seibel filed a cross-bill against the defendant Ruckdeschall. Decree on the cross-bill for defendant Seibel. Defendant Ruckdeschall appeals.

*Affirmed and remanded.*

On March 24, 1909, Bernard Ruckdeschall paid over to one James McF. Gummey the sum of $9,000.00 and took his note for the sum of $10,000.00 payable thirty days after date. The note was not paid at maturity and the record does not disclose what other renewals of this note there were by Gummey in the meanwhile, but some time thereafter, precisely what date does not appear, the date probably being August 17, 1909, one Charles H. Burr became also bound to Ruckdeschall for the same $10,000.00, Burr, being induced by Gummey to become bound on a renewal note for such amount at the request of Ruckdeschall, on Gummey's representation to Ruckdeschall that Burr was originally a joint beneficiary with Gummey of the $9,000.00 aforesaid. On this renewal note Burr appeared as maker and Gummey as endorser but the evidence in the cause shows affirmatively that the new note was not given for any new consideration and was not intended by any of the parties thereto to be a new contract in lieu of the original contract, but was given merely to furnish Ruckdeschall with a renewal note for the same obligation and an additional surety. Some time later, the precise date not being disclosed by the record, probably in October, 1909, on Gummey's representation to Ruckdeschall that H. J. Seibel, Jr., was also originally a joint beneficiary, with Gummey and said Burr. of the said $9.000.00, and upon Ruckdeschall's urgence that Seibel also be brought in as surety for said $10,000.00, at the request of Gummey, Seibel endorsed a renewal note for the $10,000.00 in favor

of Ruckdeschall. The preponderance of the evidence however clearly shows that Seibel did not know at the time, or at any time prior to the taking of the depositions in the cause, that Gummey had made such representation to Ruckdeschall and the evidence in the cause satisfactorily establishes the fact that Seibel became bound on the note aforesaid as accomodation endorser for Gummey and that such only was in truth the nature of his obligation throughout the subsequent history of the transaction, although at times his name appeared as maker of subsequent renewal notes, and as guarantor on some of such notes, as well as endorser. Burr also remained bound in one form or another, as maker or endorser, on such renewal notes. But the evidence in the cause shows affirmatively that none of these notes was given for any new consideration or was intended by any of the parties thereto as a new contract in lieu of the original contract but were given only as renewals of such contract and only for the same original consideration. The deposition of Ruckdeschall himself clearly shows this.

In March, 1919, Seibel paid $1,000.00 on thecurrent note and a renewal note was executed for $9,000.00 dated March 28, 1910, signed by Burr as maker and endorsed by Gummey and Seibel. On April 5, 1910, either Gummey or Burr paid $500.00 on the current note and Seibel then paid a like amount, reducing the obligation to $8,000.00. Two notes were then executed for the $8,000.00, of date April 5, 1910; one for $500.00 on which Seibel appears as maker and Burr and Gummey as prior endorsers to Ruckdeschall; and the other for $7,500.00, on which Burr appears as maker and Gummey and Seibel as endorsers. The $7,500.00 last named note seems to have been renewed from time to time without curtailment until September 6, 1910, when one for $7,500.00 with Burr as maker and Gummey and Seibel as endorsers was executed. This

seems to have been the last execution of any note for the $7,500.00 parcel of the aforesaid obligation. The $500.00 note last named was payable on April 24, 1910, and a note was given in renewal thereof dated April 5, 1910, payable April 25, 1910 with the same maker and endorser. This seems to have been the last execution of any note for the $500.00 parcel of the said obligation.

There were subsequent partial payments on said $500.00 and $7,500.00 notes during September, October, December, 1910, February, March, April, May, June, July, August, October and November 1, 1910. All of these payments were made by Seibel. No specific application was made by him of such payments on such $500.00 or $7,500.00 notes nor by Ruckdeschall, the holder and owner of such notes, but such payments were made by Seibel and considered by Ruckdeschall as made on the obligation as ·a whole which was evidenced by such notes.

The last named payments reduced such obligation to the balance of $6,539.21 as of September, 1911, and on that day Seibel confessed ·judgment in Virginia in favor of Ruckdeschall on such balance as unpaid and owing on such notes. Subsequently, Seibel paid to Ruckdeschall on such judgment various partial payments, beginning with $600.00 on November 29, 1919, and followed at intervals in 1911, 1912 and 1913 with other payments until December 22, 1913, which was the last payment made by him, the whole of such payments on the judgment aggregating $6,650.00, reducing the judgment to the amount of $2,854.11 as of January 11, 1916, which is the amount of such obligation asserted by Ruckdeschall in this cause against Seibel and is sought to be enforced therein as a lien binding upon real estate in Virginia belonging to Seibel.

All of the aforesaid notes were executed in Pennsylvania, were delivered and were payable in that State.

Seibel owed other obligations besides that aforesaid,

some of them deed of trust debts and some judgment debts, binding as liens upon his said land in Virginia. The original cause before us was instituted by a lien creditor's bill filed by one R. C. Bane, a lien creditor of Seibel, against said Seibel, Ruckdeschall and others as defendants. There was an order of reference in the cause which being executed showed, per report of the commissioner, among other debts of Seibel, the judgment lien aforesaid in favor of Ruckdeschall for said balance of $2,854.11 as of January 31, 1916. Thereupon, Seibel excepted to such report on the ground, among others, that the judgment aforesaid is usurious at least to the extent of $1,000.00, which sum at least it was alleged in the exception should be allowed such defendant as a credit thereon. And a few days later Seibel filed his answer in such cause against Ruckdeschall which he asked to be treated as a cross-bill and bill of discovery, and the decree of the court below entered on that date ordered that it be so treated.

The cross-bill alleged that the original $10,000.00 note aforesaid was given by Gummey for a loan of money by Ruckdeschall to him; that only $9,000.00 was in fact so loaned and that the original obligation was usurious to the extent of $1,000.00, and that the said judgment debt had not been purged thereof, and still contained such original amount of usury together with the interest thereon, and asked for a discovery from the defendant Ruckdeschall by answer under oath of "the amount of money lent to said James McF. Gummey and the amount for which he received the notes and obligations upon which the judgment complained of is a part; and that he be required to answer under oath what payments have been made since the original transaction and disclose fully all circumstances and transactions connected with the entire matter."

The defendant Ruckdeschall filed a demurrer, with

grounds of demurrer specifically assigned, a special plea of the statute of limitations and an answer under oath to said cross-bill.

The answer is responsive to the prayer of the cross-bill for discovery and, in substance, takes the position that the $9,000.00 aforesaid was the purchase money for certain real estate which, in accordance with an agreement between Gummey and Ruckdeschall under which the outlay of the $9,000.00 was made, the latter was to buy and hold until Gummey and his associates could raise the money to take off his hands, which Gummey stated would be in less than a month, and that Ruckdeschall was then to sell the property to Gummey and his associates at a profit of $1,000.00, and that the original note aforesaid was given for the $10,000.00, although only $9,000.00 was in fact turned over by Ruckdeschall to Gummey, merely as a guaranty that the $9,000.00 investment and the stipulated profit of $1,000.00 would be returned to Ruckdeschall.

The deposition of Ruckdeschall in the cause however does not square with the discovery made in his answer. He says in his deposition, in substance, that the agreement in accordance with which he let Gummey have the $9,000.00 was, not that Ruckdeschall was to become the purchaser of any property and thus put the $9,000.00 into an investment, but that "Mr. Gummey proposed that he had a settlement to make for some real estate and that if I (Ruckdeschall) would put up this money he would give me a note for $10,000.00 for nine. He said he could make a profit out of it and that the people he was dealing with could make a profit of one thousand dollars for advancing the money." Again this witness was asked and answered as follows: "After Mr. Gummey had used this $9,000.00 in the way you have described, what was he to do next with the property that he so acquired? A. * * He was to buy it for some one and sell it over again to make

a profit out of it." and again, on cross examination this witness testified that Gummey said "* * that the associates were buying some property and he wanted this money to complete the settlement and there would be enough profit out of it to give me (Ruckdeschall) $1,000.00—profit for my lending the money to help them through—and it would be forthcoming in thirty days. Q. Then, you did not buy property from Gummey? A. No, Gummy was to buy the the property and I was to be interested in his profit from the sale of it." Ruckdeschall further testified that the $1,000.00 was to be paid him "as a commission for putting up the money" and that if Gummey had made no profits still Ruckdeschall was to be paid the $10,000.00. Again, Ruckdeschall was asked,—"In other words, you would be paid $10,000.00 for the loan of $9,000.00 regardless of whether any profit was made or not?" And he answered: "Well, I fully expected. that, because Mr. Gummey told me that he was going into this real estate where he was going to make this money and if I would put up this money he would give me $1,000.00 out of the deal; if he did not get it, that was up to him." This witness further testified that he did not know whether Gummey made any profit or not in the transaction.

John D. Taylor, a witness in the cause for Seibel testified as follows:

"I made the negotiations with Mr. Ruckdeschall. I told him that Mr. McF. Gummey wanted to borrow $10,000.00 for certain things that he was interested in and for which he was willing to pay $1,000.00 and Mr. Ruckdeschall the following day turned over the $9,000.00 to him. Q. What did he get for the $9,000.00? A. A note for $10,000.00. Q. Then McF. Gummey paid Mr. Ruckdeschall a thousand dollars bonus? A. Well, it was as I say, the check was for $9,000.00 and the note was for $10,000.00."

47

It is sufficient to say further of the answer, the demurrer and special plea that they raise the questions which are disposed of in the opinion below.

The further material facts shown in evidence in the cause are referred to in the opinion of the court.

The court below entered a decree sustaining the allegation aforesaid of usury made in the cross-bill; held that the plea of the statute of limitations aforesaid could not avail as a defense thereto; and decreed "that the said H. J. Seibel, Jr., has the right at his option and upon the payment of the balance of said judgment * * ($2,854.11—with interest thereon from January 31, 1916) * * to retain and deduct the sum of $1,000.00, being the amount of the usurious excess over the legal rate as ascertained by the court, with interest thereon from March 24, 1909;" and certain costs of suit were decreed to be paid by the defendant Ruckdeschall.

*Blackburn Smith* and *Ward & Larrick*, for the appellant.

*E. H. Jackson* and *Aubrey G. Weaver*, for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error will be disposed of in their order as stated below.

[1, 4]    1. Was the original obligation, set forth in the statement preceding this opinion, usurious?

The legal principles and the rule of evidence governing this enquiry have been long well settled and therefore need no restatement here. The enquiry under consideration is purely one of fact. If the transaction under investigation was in truth an investment in a particular enterprise or business entitling the investor to a share

of the profits and the agreement as to the profits was in fact a guaranty of a minimum but left the investor entitled to a greater profit if made, so that in effect a partnership was created, and the agreement for profit was not in the nature of an agreement for interest—as is alleged in substance in the answer of Ruckdeschall was the true nature of the transaction—it would not have been usurious.    3 Minor's Inst. (2d ed.) 306-310; *Clemens* v. *Crane*, 234 Ill. 215, 84 N. E. 884; Collyer on Partnership (6th ed.) sec. 68; *Orvis* v. *Curtiss*, 157 N. Y. 657, 52 N. E. 690, 68 Am. St. Rep. 810; *Duffy* v. *Gilmore*, 202 Pa. 444, 51 Atl. 1026.  It is also true that it was held in *Ward's Adm'r* v. *Cornett*, 91 Va. 676, 22 S. E. 494, 49 L. R. A. 550, that usury must be established beyond a reasonable doubt. But this holding was taken from *Brokenborough* v. *Spindell*, 17 Gratt. (58 Va.) 21, where it was said that usury "should be proved beyond a rational doubt to the contrary."   Judge Keith, however, in the opinion of this court delivered by him in *Evans* v. *Rice*, 96 Va. 50, at p. 55, 30 S. E. 463, 465, quotes the language next above quoted and says:  "We should with reluctance accept the sentence quoted as accurately expressing the degree of proof required in such cases.  It seems to us somewhat severe in its terms, but we are warranted, and indeed compelled, to hold that usury must be proved by a clear and satisfactory preponderance of the evidence."   The latter is we think the true rule on the subject.   Further: As the answer aforesaid is under oath and is responsive to the cross-bill exhibited by Seigel as a bill of discovery, it is evidence in favor of Ruckdeschall; and, as it makes statements which if true disclose a transaction free of usury, the evidence of such answer must be overcome by the testimony of two witnesses or of one witness and corroborative circumstances, and a different state of facts established in order to entitle Seibel to the relief he seeks.

But in this cause we have the testimony of two witnesses which overcomes the evidence furnished by the answer and establishes a different state of facts, namely, the testimony of Taylor and of the respondent Ruckdeschall himself, which testimony, as set forth in the statement preceding this opinion, establishes by a clear and satisfactory preponderance of the evidence the fact that the true nature of the transaction aforesaid was not an actual investment in any particular enterprise or business, but an agreement for a profit in the nature of interest on the $9,000.00 loaned, which exceeded the rate allowed by law, and hence the original obligation aforesaid was unquestionably usurious.

[5]    2. Can the bill in equity for discovery filed by Seibel be maintained?

The cross-bill in question admits liability for the principal sum justly due after the elimination of the usury in accordance with the laws of Pennsylvania, which are alleged as governing the subject, and in effect admits liability also for legal interest on such principal sum, and thus conforms to the law of the forum—to the rule on the subject which obtained in ancient chancery practice; and therefore, if Seibel occupies such a relationship to the debt in question that he can make the defense of usury against the enforcement of it in this suit, the bill in question can be maintained for discovery of the usury and for relief therefrom based on such discovery independent of any statute affording that remedy. *Young* v. *Scott,* 4 Rand. (25 Va.) 415; and *Munford* v. *McVeigh,* 92 Va. 446, 449, 23 S. E. 857.

[6] Indeed no objection is urged against the right of Seibel to maintain such a bill, except that he was not the "borrower" of the money; and the position is taken for Ruckdeschall that the statute in Virginia (sec. 2822 of the Code) affords the remedy by bill of discovery and relief

from usury to the "borrower" of the money only.    It is
true that such statute in terms affords such remedy only
to a "borrower."    But the object of that statute was not
to confer jurisdiction upon equity of suits for discovery
and relief in cases of usury, for that jurisdiction existed
independent of statute.    The mischief which the statute
under consideration was meant to cure was this, and this
only : By the rule of the forum no plaintiff could maintain
a bill in equity for discovery and relief from usury with-
out waiving all forfeiture inflicted by the usury statute of
the right of the lender to recover the principal sum justly
due and legal interest thereon.    The statute (sec. 2822)
was enacted to enable a plaintiff to maintain such a bill and
not waive the penalty inflicted by the usury statutes on the
lender of forfeiture of all interest on a loan tainted with
usury, including interest on the principal sum justly due
as well as usurious interest.    See *Young* v. *Scott, supra,*
4 Rand. (25 Va.) 415, and the authorities therein cited for
the state of the law which the statute last cited was meant
to change.

[7] But even if the cross-bill had not in effect contained
the waiver of forfeiture aforesaid, if Seibel was entitled
to make the defense of usury, he could have exhibited the
bill in the name of the "borrower" for his use and benefit
and thus could have maintained the bill under this statute
section 2822; and this being true, equity, which looks at
the substance and not the form of things, would not dismiss
the bill merely because filed by Seibel in his own name.

So that we are of opinion that in the case before us the
bill in question can be maintained both under the ancient
chancery practice existing as above stated and under the
statute last mentioned, if, as aforesaid, Seibel. the plain-
tiff in such bill, occupies such a relationship to the debt
as entitles him to defend against it on the ground that it
is usurious.

This brings us, therefore, to the following questions:

[8] 3. Is the plaintiff, in the cross-bill, Seibel, entitled to make the defense of usury against the debt aforesaid?

It is true that the plea of usury is a personal plea which can be made in general only by the borrower himself. But this is not a rule which is universal in its application. It is established by the great weight of authority that a surety on a debt may plead usury, just as the principal may, where the sole consideration of the promise of the surety is the same as that of the principal debtor, that is, a loan or credit given to the principal debtor. 39 Cyc. 1075. Such is the position of Seibel in the cause before us, the fact being that he was merely an accommodation endorser and as such was a surety on the obligation in question, as is established by the preponderance of evidence in the cause, as set forth in the statement preceding this opinion.

We are of opinion, therefore, that the question last stated must be answered in the affirmative.

[9] 4. Should the plea of Ruckdeschall of the statute of limitations have been sustained?

Ruckdeschall, in his plea of the statute of limitations, relies on section 2823 of the Code of Virginia. This statute, so far as material, is as follows:

"If an excess beyond the lawful interest be paid in any case the person paying the same may in a suit brought within one year thereafter recover it from the person with whom the contract was made or to whom the assurance was given * * *."

Sec. 2821 of the Code of Virginia, so far as material, also provides, as construed in *Munford* v. *McVeigh, supra,* 92 Va. at p. 454, 23 S. E. 859, as follows: "* * * that where usury is established in an action brought by the lender on an usurious contract, the judgment shall be rendered for the principal sum only." And the case last cited also holds that under the statute law of this State then in force

(which is the same as that applicable to the case before us in so far as such law is applicable at all) the same is true of the measure of relief granted in equity in a suit therein by the borrower for relief and discovery (and, as we have seen, the same rule is applicable in a suit in equity by a plaintiff such as Seibel, who exhibits his bill under section 2822 of the Code), namely that the lender can recover the principal sum only. Such a suit, in general, is in its nature not a suit to recover back usury paid, but sets up the usury in equity as a defense *pro tanto* against the enforcement of the debt.

[10, 11] And when we consider that the effect of usury at common law was to render the whole contract void because of its illegality; that the option of at any time refusing to pay and of retaining the whole sum, both of principal and interest, involved in an usurious transaction, continued to remain with the debtor at common law so long as the debt was unpaid or was not novated; and that the statutes in Virginia on the subject have gone no further than merely to limit what the debtor may in such case refuse to pay and retain, and has not at all altered the common law right aforesaid with respect to what the statute still permits the debtor to refuse to pay and retain, it is clear that the Virginia statute of limitations (sec, 2823 of the Code), relied on by the lender, Ruckdeschall, in the cause before us, has no application to suits in equity by the borrower or a surety, such as Seibel, for relief from unpaid usury, unless the plaintiff in such a suit seeks to have credited on the debt payments which have been in fact made and applied to the usurious principal or usurious interest. The statute does apply to such payments but to no other. That is to say, it is plainly applicable only to usury which has been in fact paid to the person with whom the usurious contract was made or to whom the usurious assurance was given, and where the usury which

has been so paid is sought to be recovered back or applied as a credit on that portion of the debt which is justly due, which is, in effect, the same thing.

Seibel, however, proved in the cause and relies on the statute of Pennsylvania on the subject (2 Stew. Purd. Dig. 1988, § 2), which, so far as material, is as follows:

"When a rate of interest for the loan or use of money exceeding that established by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay the creditor the excess over the legal rate, and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any debt; and in all cases where any borrower or debtor shall heretofore or hereafter have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, no action to recover back any such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within six months from and after the time of such payment * * *."

[12] It is plain from the language of this statute that it too, like the Virginia statute, has no application to suits in equity such as that instituted by the cross-bill of Seibel in this cause; and that that statute also, like the Virginia statute aforesaid (sec. 2823 of the Code), in so far as the limitation of actions is concerned, is applicable only to usury which has in fact been paid and is sought to be recovered back as aforesaid.

The question under consideration therefore leads to another, and that is as follows:

[13] 5. Has any of the alleged $1,000.00 usury reserved at the time of the original contract or any interest thereon (which of course was also usurious) been paid to the lender, Ruckdeschall?

This question must be answered in the negative on the record before us. As shown by the evidence in the cause,

as set forth in the statement preceding this opinion, neither Gummey nor Burr appear to have applied the payment of $500.00 which was made by one or the other of them, to the usurious portion of said debt or to any of the interest on such portion; nor did Seibel, who made all the other payments which were made, make such application of any of them; nor did Ruckdeschall, so far as the evidence discloses, make such application of any of the payments made to him. In such case the court, where the usury is in issue before it, and is established, will, under the Virginia statute, eliminate the usurious principal and all interest, and will apply the payments on the principal sum justly due, and will allow the lender to recover only the balance thus found to be owing to him of such principal, without any interest, *Munford* v. *McVeigh, supra,* 92 Va. 446, 23 S. E. 857; and, under the Pennsylvania statute aforesaid, the court will eliminate the usurious principal and all interest thereon and apply the payments on the principal sum justly due, together with legal interest thereon, and will allow the lender to recover the balance thus found to be owing to him of such principal and legal interest.

[14] The latter was the course pursued by the court below in accordance with the position aforesaid taken by Seibel in his cross-bill. Seibel is not complaining of such holding. Ruckdeschall has made no assignment of error before us complaining of such holding on the ground that interest has been allowed him on the sum justly due him in accordance with the Pennsylvania statute, rather than the infliction of the penalty imposed by the Virginia statute of the forfeiture of all interest. And the holding of the court below being in accordance with the law of Pennsylvania and more favorable to Ruckdeschall than he was entitled to under the law of Virginia, it therefore becomes immaterial and, hence, unnecessary for us to determine whether the law of Virginia or that of Pennsylvania gov-

erns any of the rights of the parties, and, if so, which of such rights in the premises.

The next question for our consideration is as follows:

6. Was the usury in the original note purged by the coming in of new parties; the execution of the different forms of obligation; and the frequent change of parties and of their relations to the debt subsequent to the original transaction?

This question is, in substance, was there at any time a novation of the original obligation?

This is purely a question of fact.

[15-18] It is true that "where third persons are mixed up with the new transaction the courts regard it with a favorable eye," (*Drake's Ex'r.* v. *Chandler*, 18 Gratt. [59 Va.] 909, at pp. 911-12, 98 Am. Dec. 762, quoting from Comyn on Law of Usury p. 186; and in the absence of explanatory evidence on the subject the coming in of a new party or parties to a new obligation, in which the relationship of the obligors is changed, as where a new party appears as maker of a new obligation, or the like, there is a *prima facie* presumption of fact that there has been a novation of the original obligation, notwithstanding that it may be true that the new obligation includes a part or the whole of the usury involved in a prior transaction. *Coffman & Bruffy* v. *Miller*, 26 Gratt. (67 Va.) 698. But, after all, it is a question of fact as to whether the new obligation is executed for motives "unaffected by the usurious consideration" and is intended "to supersede or supplant" the original security. *Drake's Ex'r* v. *Chandler*, 18 Gratt. (59 Va.) at p. 910, 98 Am. Dec. 762. As said in the case last cited, quoting from *Walker* v. *Bank of Washington*, 3 How. (U. S.) 62, 11 L. Ed. 494; " 'The mere change of securities for the same usurious loan to the same party who received the usury * * * does not purge the original illegal consideration * * *. Every subsequent security given

for a loan originally usurious, however remote or often renewed, is void.' " If the new obligation be in fact a new contract founded in whole or in part on a new consideration, although it be not in fact a valuable but merely a meritorious consideration, *Drake's Ex'r* v. *Chandler, supra,* 18 Gratt. (59 Va.) 910, 98 Am. Dec. 762, then indeed there will have been a novation of the obligation, *Coffman & Bruffy* v. *Miller & Co., supra,* 26 Gratt. (67 Va.) 698; and see notes on usury in 67 Va. Rep. Anno. pp. 229, *et seq.* and in 59 Va. Rep. Anno. p. 909. But, in the case before us, Ruckdeschall himself testified to the effect that the various notes given and accepted by him subsequently to the original note were all executed for the same consideration as was the original note and none other; that they were parts of one and the same transaction and none of them were intended by any of the parties thereto to constitute a new contract. And to the same effect is Seibel's testimony.

[19] Further: It is clearly shown by the evidence in the record that there was no new consideration moving to Seibel for the confession of judgment set forth in the statement preceding this opinion, nor was it intended or considered by him or Ruckedschall, at the time, as a novation of the debt. The judgment, it is true, merged the contract evidenced by the notes on which it was entered, and it became subsequent and different security; but the judgment, nevertheless, was wholly based on obligations which were unpurged of and hence were tainted with the usury aforesaid. Therefore, the judgment was itself inescapably also tainted with such usury.

We therefore conclude that there was not a novation of the original debt so as to purge it of usury and that the question under consideration must be answered in the negative.

We have still another question to dispose of, which is as follows:

[20, 21]   7. Is the security, Seibel, barred from settling up the usury in the original obligation or in the notes on which the judgment was entered, by his confession of judgment?

It is settled in Virginia that a judgment by default does not bar the judgment debtor from thereafter setting up the defense of usury against the judgment when it is sought to be enforced in a court of equity.   *Greer* v. *Hale,* 95 Va. 533, 28 S. E. 873, 64 Am. St. Rep. 814.   We see no difference in principle as affecting the question under consideration, between a judgment which is confessed and one by default; nor do we, indeed, perceive any difference, as affecting such question, between such judgments and any other judgment where the usury was not in fact pleaded or put in issue as a defense in the action which resulted in the judgment.

As said in *Brown* v. *Toell's Adm'r,* 5 Rand. (26 Va.) 543, 16 Am. Dec. 759:  "It is competent to a party to an usurious contract, to go into equity for relief * * *, even after judgment at law and without assigning any reason for having failed to defend himself at law."   See to same effect, *Rankin* v. *Rankin,* 1 Gratt. (42 Va.) 151, and *Terry* v. *Dickenson,* 75 Va. 475.   But for a contrary holding in Virginia see *Hope* v. *Smith,* 10 Gratt. (51 Va.) 221.   It has been expressly held in some decisions in other States that a judgment by confession may be opened where it is alleged to be usurious.   1 Black on Judgments 105; ·*McGuire* v. *Campbell,* 58 Ill. App. 188; *Marr.* v. *Marr,* 110 P. A. 60, 20 Atl. 592; *Webster* v. *Smith,* 36 Pa. Super. Ct. R. 281.   And there are other decisions holding that a judgment does ᐧnot bar the subsequent defense of usury against its enforcement.   23 Cyc. 1200.   It may be true that where the confession of judgment is not on a warrant of attorney given as a part of the same transaction as the execution of the obligation in question, a majority of

the cases may hold that the judgment cannot be reopened. But the cases so holding, so far as we have had access to them, do so on the principle that a judgment is conclusive against the defendant of every legal defense which might and should have been made against the action and that the defense of usury is not an equitable but a legal defense and should be made, if at all, in defense of the action at law. See note to 12 L. R. A. (N. S.) pp. 659-660; *Hope* v. *Smith, supra,* 10 Gratt. (51 Va.) 221; *Montague* v. *McDowell,* 99 Pa. 265; *Bell* v. *Fergus,* 55 Ark. 536, 18 S. W. 931; *Kendig* v. *Marble,* 58 Iowa 529, 12 N. W. 586; 39 Cyc. 1025-6. But it seems to us that although the defense of usury is generally a legal defense, it is in truth in its nature purely equitable in character where, as in the case before us, it does not invoke any forfeiture of principal or interest justly due—does not avail of any statutory penalty creating such a forfeiture, but takes the equitable position that the lender is entitled to such principal and interest as is justly due; and, too, where a statute, as does section 2822 of the Code, expressly confers upon a court of equity jurisdiction in the terms which such statute uses. As it happens the case before us falls within both of these classes of cases, as aforesaid. The well established rule that a judgment at law will not conclude defenses which are of a purely equitable character would seem to us to be controlling in the former, and the authority of the statute in the latter class of cases. That is to say, the principle of *res judicata* does not apply to either of such classes of cases.

[22] Of course, if a debt is being enforced in a suit in equity against a party to the suit and he fails to make the defense of usury before final decree, the principle of *res judicata* applies in that case in bar of the defense of usury. *Snyder* v. *Loan Building Co.,* 52 W. Va. 655, 44 S. E. 250. But such is not the case before us.

There is evidence in the record tending to show that Seibel did not have knowledge of the existence of usury in the transaction at the time he confessed the judgment. But in the view we have taken of the question under consideration we deem that fact, if it be a fact, immaterial, and we do not consider it necessary to enter upon a consideration of the subject of whether the judgment should be reopened on the ground of mistake (39 Cyc. 1026), or lack of knowledge on the part of the judgment debtor of the grounds of defense at the time of the judgment (23 Cyc. 1198). For the reasons above stated we are of opinion that different principles govern the subject and that the rule laid down in the case of *Brown* v. *Toell's Adm'r, supra,* 5 Rand. (26 Va.) 543, 16 Am. Dec. 759, above quoted, is applicable to and is decisive of the question under consideration.

But one other matter remains to be disposed of.

[23] Our attention is called in the supplementary brief for Ruckdeschall to the form of the decree under review set forth in the statement preceding this opinion, in that the decree does not fix the amount of the debt but leaves that question still open dependent upon the option given Seibel, the judgment debtor, "to retain and deduct" the usurious principal and interest thereon aforesaid, "upon the payment of the balance of the judgment." (See the form of the decree set forth in the statement preceding this opinion). The phraseology of the decree is open to this objection. Doubtless the attention of the court below was not called to this as no assignment of error is based on it. On the going back of the cause to that court it should alter the form of the decree so as to fix the amount of the judgment subject to the deduction of the usurious $1,000.00 and all interest thereon, and the decree should establish the order of priority of such debt as a lien upon the real estate involved in the cause. We shall not under-

take to do this by the decree we shall enter for the reason that the record does not disclose whether the master commissioner's report has or has not been acted on, or whether the order of priority of the debt in question as therein reported is or is not correct.

[24]    In this connection we should perhaps mention the further position taken in the supplemental brief for Ruckdeschall aforesaid, to-wit, that there should have been a personal decree in favor of Ruckdeschall against Seibel for the amount of the judgment which is found by the court to be justly due when purged of the usury.    But we think that there is no need of any such personal decree being entered in this cause.    Such a decree would be but another judgment.    The personal judgment already exists, and by order of court in this cause, entry can be made on the judgement lien docket, where the judgment is docketed, of the effect of the decree which will be entered by the court below in conformity with this opinion, as to the proper deduction from or credit on the original amount of the judgment.    Thereafter such other proceedings may be had from time to time on the judgment as the judgment creditor may be lawfully entitled to.

Therefore, subject to the modification of the form of the decree under review, which will be made by the court below in accordance with the two paragraphs of this opinion next above, such decree will be affirmed with costs to the appellee Seibel, as the party substantially prevailing.

*Affirmed and remanded.*