Eichleay, Jr., Co. et al. *v.* Antonoplos, Appellant.

Argued October 12, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*H. F. Stambaugh,* with him *Ralph H. Demmler* and *Watson & Freeman,* for appellants.—The Act of 1927 is constitutional and applies in this case.

The language added to the proviso of the Act of 1927 by the Amending Act of 1929, does not apply to this case.

The amendment of the Act of 1929 impairs the obligation of appellant's contract: Sturges v. Crowninshield, 4 Wheat. 122; Koshkonong v. Burton, 104 U. S. 668.

Where a statute removes the defense of usury, another statute which attempts to restore the defense of usury, is unconstitutional: First Ecclesiastical Soc. v. Loomis, 42 Conn. 570; Moore v. Luce, 29 Pa. 260.

*Thomas Watson,* with him *Robert M. Steffler,* for appellee.—The obligation of a contract is to be determined as of the date of its creation: Louisiana v. New Orleans, 102 U. S. 203.

The constitutional inhibitions against the impairment of contracts do not apply to legislation of a procedural nature or merely affecting the remedy: Ewell v. Daggs, 108 U. S. 150.

The state may under its police power enact statutes deemed necessary fixing the maximum rate of interest and dealing with the general subject of usury: Griffith v. Connecticut, 218 U. S. 563; Lewis v. R. R., 220 Pa. 322; Powell v. Com., 114 Pa. 265; Fitzsimmons v. Baum, 44 Pa. 32; Campbell v. Sloan, 62 Pa. 481; Com. v. Hill, 46 Pa. Superior Ct. 505.

OPINION BY MR. JUSTICE LINN, November 28, 1932:

This bill desires cancellation of plaintiffs' collateral note for $140,000, and the return of the collateral, on the ground that the principal, $110,000, with lawful interest, has been paid, and that the balance is "a bonus, premium or extra interest charge payable to the defendant, for the use of the said money," which defendant is

not entitled to collect: Act of April 28, 1858, P. L. 622, 41 PS, sections 3 and 4. The answer denied usury; alleged that the note represented not only a balance of principal of $110,000, but (1) unpaid interest on this and prior notes; (2) release of a claim for services as manager of Olympic Amusement Company's business for a specified time; (3) cancellation of a certain option given by defendant to plaintiff; (4) surrender of 400 shares of capital stock of the amusement company held by defendant as collateral for plaintiffs' notes.

After hearing on exceptions to the adjudication, a final decree was entered by the court in banc, holding the excess above $113,066.67 to be usurious and uncollectible, and requiring the surrender of the note and collateral upon payment by plaintiff of $8,860.44, the balance due on said note, with interest from July 15, 1932. Defendant appeals.

Each party owned half of the capital stock of Olympic Amusement Company, a Pennsylvania corporation, doing business in Pittsburgh. Exercising an option granted by defendant, the corporate paintiff bought defendant's stock for $225,000, giving in part payment two collateral notes made by it, each for $50,000, dated May 4, 1920, one at 30 days and the other at 4 months, depositing with each 400 shares of the capital stock of the company. On May 14, 1920, defendant made a third loan to plaintiff in the sum of $50,000, taking a third note for $50,000 at 4 months, with 600 shares of the stock as collateral. Plaintiff defaulted on both notes of May 4th and on September 10th paid $40,000 on account and received back its three notes, and gave to defendant its note at 4 months for $140,000, the note involved in the present suit, with 1,000 shares of the preferred stock of the company as collateral. Plaintiff proved payment of $115, 819.97 on the note on various dates from November 9, 1920, to January 27, 1928, and defendant admitted receiving that total. The important question is what did the difference, required to run the amount up to $140,000,

represent? Was it a sum in excess of the legal rate of interest, as plaintiff contends, or, as defendant contends, consideration for the release from other obligations alleged to be owing by plaintiff to defendant?

The evidence sustains the findings of the amounts, principal and interest, paid and payable, as stated in the decree. We also accept the findings (because supported by evidence and approved by the court in banc) to the effect that the option agreement had been performed; that the exchange of collateral gave defendant a security superior in value (not reviewable here because no exception was taken below); that plaintiff had never employed defendant; that there was no consideration for the payment of any part of the $140,000 other than money loaned or interest calculated and allowed in the final decree. Though these findings dispose of the issues raised in the answer, defendant at the trial sought to bring into the case, apparently without averment in the answer or objection by plaintiff, as part of the consideration for the note in suit, the cancellation of another agreement by which plaintiff was said to have been obligated to defendant. This is referred to in the record as the drachma agreement, only part of which is printed in the record. It is dated June 24, 1920; recites that plaintiff has borrowed $100,000 from defendant on condition that plaintiff would "pay to [defendant]......the difference in drachmas between the rate of exchange of the date of the above loan and the rate of the date of any part or whole payment, i. e., the [plaintiff will] ......pay as many thousand dollars, United States currency, as will purchase 954,000 drachmas at the date of the payment of any part or of the whole debt." The parties also recite that one dollar would purchase 9.45 drachmas at that date. We are not advised whether, by the words "the above loan" the parties intended to refer to part of the three $50,000 notes held by defendant (one of which was past due) or not, but we do not understand what the agreement means unless the plaintiff re-

ceived the right to pay less than $100,000, in full payment of that sum, if the market price of drachmas fell, and became obliged to pay a greater sum than the loan in question and the face of the notes, if the price rose. The learned court below was of opinion that it was a gambling contract, providing for mere settlement of market differences[1] with no intention to make delivery; there is evidence to support the determining fact, a conclusion that puts this agreement out of the case.[2]

Appellant contends that the Act of April 27, 1927, P. L. 404 (which was amended May 8, 1929, P. L. 1647), 41 PS, section 2, repeals the Act of 1858, supra, in force when the note was made, and that the repeal vested in him the right to recover the face of the note, whether usurious or not, and that such right is protected by the Constitution from the operation of the Amendment of 1929. The contention must be rejected. The Act of 1927 provides: "No corporation shall hereafter plead or set up usury, or the taking of more than six per cent interest, as a defense to any action brought against it to ......enforce payment of, or other remedy on any ......note......executed......by said corporation: Provided, that this act shall not apply to any action which is now pending......" To that the Amendment of 1929 added the following: "or to any suit or action instituted subsequent to the effective date of the Act of April 27, 1927, upon any......note......executed

---

[1] Defendant testified: "They [defendant and his brother] wished to purchase Greek exchange for speculation, and when we [defendant] asked for the money, they [plaintiff] could not secure it for us. Told them the price of the drachmas we could secure and they [plaintiff] made own proposition; that they would stand the difference between the price at that date and the date they were to pay us the money, and therefore I agreed to that agreement."

[2] L. H. Taylor's Assigned Est., 192 Pa. 304; Jennings v. Morris, 211 Pa. 600; Fearon v. Little, 227 Pa. 348; N. Y., etc., R. Co. v. Coal Co., 286 Pa. 72, 84; a recent case of dealing in foreign exchange is Ironmonger & Co. v. Dyne, 44 Times Law Rep. 497, (1928).

......by said corporation prior to the effective date of the said Act of April 27, 1927."

The Act of 1927 repealed all inconsistent legislation and, therefore, in part superseded the Act of 1858. Section 2 of the Act of 1858 provided as follows: "That when a rate of interest for the loan or use of money, exceeding that established by law, shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over the legal rate; and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any such debt; and in all cases where any borrower or debtor shall heretofore, or hereafter, have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, no action to recover back any such excess shall be sustained in any court of this Commonwealth, unless the same shall have been commenced within six months from and after the time of such payment: ......"

The Act of 1858 applied to the transaction when the note was made. Under that act, at default, the lender had two remedies: (1) to sue on the note, (2) to foreclose the collateral. If he pursued the first, the borrower might satisfy the demand by paying the actual debt with 6% interest, instead of paying the face of the note. If the lender foreclosed the collateral and so received the full amount of his claim, he held the excess over the real debt and interest, for the account of the lender (Marr v. Marr, 110 Pa. 60, 64, 20 A. 592) who could recover it if he brought suit in time. As the lender was entitled to receive the money loaned with interest (the transaction being not illegal: Montague v. McDowell, 99 Pa. 265, 269) the portion of the act enabling (1) the borrower to satisfy his promise by repaying the loan with interest, or (2) to recover the excess promised and paid, if he sued in time, furnished the remedies, available to either party, to keep the transaction in harmony with the declared policy of the State which was to make contracts

for the payment of interest in excess of the legal rate voidable at the option of the borrower who would exercise the option in time. How, then, did the Act of 1927 affect the matter? It deals entirely with the remedy. The lender, if a corporation, can no longer discharge his promise by paying loan and six per cent interest; it must pay all that it promised, the legislature having withdrawn its leave to get anything back by suit. Under the police power such transactions are subject to regulation by the State. The applicable principle is considered in Ewell v. Daggs, 108 U. S. 143; at page 151, the court said: "and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract."

Nothing was done by either party between the effective date of the Act of 1927 and the Amendment of 1929. By that amendment the legislature clarified or perhaps amplified its declaration of public policy on the subject, made by the Act of 1927, by confining the disability to plead or set up usury to obligations created after the Act of 1927. The Act of 1929 deprived the lender of no right possessed under the Act of 1858 pursuant to which the loan was made; the obligation of the contract has therefore not been impaired. See generally, Hepburn v. Curts, 7 Watts 300; Schenley v. Com., 36 Pa. 29, 57; Com. v. Duffy, 96 Pa. 506; DeJoseph v. Car Co., 99 Pa. Superior Ct. 497.

Decree affirmed; costs of the appeal to be paid by appellant.